ELIZABETH LAKE ESTATES v. TOWNSHIP OF WATERFORD.

1. EVIDENCE—JUDICIAL NOTICE—INCREASE OF BUILDING COSTS DUR-
ING WAR HOSTILITIES.
The Supreme Court takes judicial notice of a progressive in-
crease of cost of construction of buildings during the period
of war hostilities from December, 1941 to August, 1945.

2. APPEAL AND ERROR—QUESTIONS REVIEWABLE—PRESENTATION TO
TRIAL COURT.
In suit to declare portions of zoning ordinance invalid, question
of estoppel of plaintiff subdivider by reason of restrictions
theretofore imposed by it upon affected area is not considered
where such matter was not presented to trial court.

3. SAME—HARMLESS ERROR—EVIDENCE.
Reception in evidence of blank forms of deeds to show restric-
tions that had been placed on lots in areas affected by zon-
ing ordinance which plaintiffs sought to invalidate in part, was
harmless error, where plaintiffs merely sought to show the
background and situation of the parties thereby.

4. TOWNSHIPS—ZONING ORDINANCE—MINIMUM FLOOR AREA AND
CUBIC CONTENT.
Where sole purpose of township zoning ordinance, affecting parts
of 2 of the 36 square miles in the township, was to conserve
property values in the immediate neighborhood and not to
lessen congestion on the public streets, nor to promote public
sanitation, health, safety and general welfare, portions of
ordinance providing for minimum floor area and cubic con-
tent of residences were invalid as unreasonable and unauthor-
ized (Act No. 302, Pub. Acts 1937, as amended by Act No. 69,
Pub. Acts 1939).

5. SAME—STATUTES—ZONING ORDINANCE—POLICE POWER.
Statute authorizing enactment of zoning ordinances by town-
ships held, not to have made the conservation of property
values the proper sole objective for the exercise of the police
power (Act No. 302, Pub. Acts 1937, as amended by Act
No. 69, Pub. Acts 1939).

6. SAME—ZONING ORDINANCE—CONSERVATION OF PROPERTY VALUES —ENFORCEABILITY OF MINIMUM REQUIREMENTS AS TO FLOOR AREA AND CUBIC CONTENT.

Township zoning ordinance provisions establishing minimum floor area and cubic content of residences to be erected in affected area were unenforceable against property owners therein desirous of erecting houses complying with restrictions theretofore imposed and which are adequate from standpoint of public health and safety, as such ordinance provisions were an unreasonable exercise of the police power where sole purpose thereof was the conservation of property values (Act No. 302, Pub. Acts 1937, as amended by Act No. 69, Pub. Acts 1939).

Appeal from Oakland; Holland (H. Russel), J. Submitted January 7, 1947. (Docket No. 2, Calendar No. 43,414.) Decided April 8, 1947.

Bill by Elizabeth Lake Estates, a Michigan corporation, and others against the Township of Waterford to have certain portions of a zoning ordinance declared unconstitutional and to restrain its enforcement. Decree for plaintiffs. Defendant appeals. Affirmed.

*Glenn C. Gillespie,* for plaintiffs.

*Robert D. Heitsch* and *Donald E. Adams,* for defendant.

REID, J. The bill of complaint in this cause was filed January 23, 1942, to obtain a decree to the effect that certain portions of a building zone ordinance adopted June 7, 1941, by defendant township of Waterford are unauthorized by law and in conflict with the national and State Constitutions and therefore void. Plaintiffs further prayed that the township be enjoined from enforcing the provisions of the ordinance as against plaintiffs. Defendant

claimed the ordinance to be lawful and that the ordinance is in accordance with the provisions of the national and State Constitutions.

After a hearing upon the merits, the trial judge found that the ordinance "in no way protects or promotes the health, or general welfare of the people in the affected area," that the controlling factor behind the ordinance was the preservation of existing property values in the immediate locality, and further found that the provisions of the ordinance were not authorized by Act No. 302, Pub. Acts 1937, as amended by Act No. 69, Pub. Acts 1939 (Comp. Laws Supp. 1940, §§ 2651–11 *et seq.,* Stat. Ann. 1942 Cum. Supp. §§ 5.2962 [1]–5.2962 [12]), and are in conflict with the provisions of the Constitution of the United States and the Constitution of the State of Michigan. The trial judge decreed that the sections of the zoning ordinance complained of are null and void. The decree enjoined the enforcement of certain provisions of the ordinance; from this decree defendant township of Waterford appeals.

The ordinance in question was to become effective 30 days after its first publication, which was July 16, 1941. The area to be affected by the ordinance was divided into four zones designated residence zones 1, 2 and 3, and commercial zone 1. The district lies between 1½ and 3 miles west of the city of Pontiac and is bounded on the north by Elizabeth Lake road. Sections 13 and 14 of the ordinance fixed the minimum size of buildings which could be erected or altered in residence zone 1 as follows:

"Sec. 13. Area of buildings: No dwelling shall be erected or altered in this zone which provides less than 500 square feet of floor area per family at the first floor level exclusive of any garage area or area in any accessory building.

"SEC. 14. Size of building: No dwelling shall be erected or altered in this zone which provides less than 10,000 cubic feet of content."

Sections 22 and 23 fixed the minimum size of buildings which could be erected or altered in residence zone 2 as follows:

"SEC. 22. Area of buildings: No dwelling shall be erected or altered in this zone which provides less than 700 square feet of floor area per family at the first floor level, exclusive of any garage area or area in any accessory building.

"SEC. 23. Size of building. No dwelling shall be erected or altered in this zone which provides less than 15,000 cubic feet of content."

Although sections 31 and 32 of the zoning ordinance were complained about in the bill of complaint and are included in the findings and in the injunction of the final decree, yet a stipulation by both parties provides for the striking out of all reference in the decree to sections 31 and 32 of the ordinance and for the modification to that extent of the decree appealed from.

Except as otherwise stated, plaintiff Elizabeth Lake Estates, a Michigan corporation, is hereinafter referred to as plaintiff. Residence zone 1, to which sections 13 and 14 apply, includes nearly all of plaintiff's subdivisions 1 and 2. There are 169 lots in Elizabeth Lake Estates No. 1 and 525 lots in Elizabeth Lake Estates No. 2 in residence zone 1, so that 694 lots owned by plaintiff are located in residence zone 1, as designated by the ordinance, as to which zone the provision is that there shall be not less than 500 square feet of floor area per family at the first floor level exclusive of garage or accessory building and that the building shall have not less than 10,000 cubic feet of content. Plaintiff claims that in resi-

dence zone 1, by uniform restrictions placed upon the premises more than 20 years ago and uniformly adhered to, the minimum cost of single dwellings was fixed at $1,800. Plaintiff claims that in residence zone 1 a house containing 10,000 cubic feet would cost, at the time of filing the bill, at least $5,000.

Residence zone 2 includes nearly all of the remainder of the property owned by plaintiff in that general locality and plaintiff claims that the uniform restrictions placed upon the premises in such zone 2 more than 20 years ago and uniformly adhered to, fixed a minimum cost of $3,000 to $5,000 upon single dwellings. Elizabeth Lake Estates No. 3, containing 569 lots, is located in zone 2, and sections 22 and 23 of the ordinance fixed the minimum size of buildings in zone 2 to require not less than 700 square feet of floor area per family at the first floor level exclusive of garage or accessory building, and provided that the cubic content of the dwelling be not less than 15,000 cubic feet. Plaintiff claims that a house containing 15,000 cubic feet in zone 2 would cost, at the time of filing the bill, at least $6,000.

An examination of the map and diagram in the record indicates that the general size of lots heretofore spoken of is approximately 50 feet frontage on the public thoroughfare and a depth of 120 or more feet, many lots being of area greater than 50 by 120 feet.

Plaintiff Cosgrove claims that in the month of April, 1941, he bought lot 1024 of Elizabeth Lake Estates No. 3 from plaintiff for $300 cash, said lot being situated in residence zone 2, where plaintiff claims the restrictions established more than 20 years ago require a minimum cost of $3,000 to $5,000. Plaintiff Cosgrove claims he procured plans and specifications for a residence to be erected

thereon, that the restrictions in his deed limited the minimum cost of the dwelling on the lot at $3,500, that he received a commitment from the Federal Housing Administration for a loan of $4,300 to construct the proposed dwelling, that the dwelling proposed by him to be erected thereon contained 11,832 cubic feet of content and the cost was estimated at $4,490, that in June, 1941, plaintiff applied to defendant township board for a permit, but that the defendant refused because the dwelling did not contain 15,000 cubic feet content, and plaintiff was prevented from building the residence for himself and family on the lot.

Plaintiff Cosgrove described his proposed residence as follows:

"It had a ground area of 24 x 34 feet and there was a full basement. It was to have a hot air furnace. The first floor contained a living room 12 x 14 feet, a vestibule which was the entrance to the living room, which was 2½ x 3 feet with a closet, to the right of the living room there was a dinette 8 feet * * * 7 inches by 9 feet 4 inches. That opened into a kitchen which was 8 feet 7 inches by 8 feet 11 inches long. It contained cupboards, sink and kitchen equipment. Back of the kitchen there was a hallway which led down to the basement and led to the outside of the house. There was also a hall and a bathroom at the back of the living room, and a linen closet. There were three bedrooms in the house, two of which were on the ground floor, and were 9 feet 2 inches by 10 feet. There were closets off the bedrooms. The second floor of the house was an unfinished attic."

The cost of Cosgrove's proposed residence early in 1941 would have been $4,490, without the cost of the lot. Defendant concedes cost of construction was still higher at the time of trial than it was in

1941. We take judicial notice of a progressive increase in cost of construction during the period of war hostilities, December, 1941 to August, 1945. We cannot doubt under the testimony in this case that the Cosgrove residence would have cost at the time of filing the bill, January 23, 1942, more than the $5,000 restriction which defendant claims plaintiff had created and still it would not comply with the burdensome requirements of the zoning ordinance.

Defendant in this Court for the first time claims estoppel because of restrictions established by plaintiff requiring at least $5,000 as the cost of residences to be erected in an area embraced in residence zone 2 of the ordinance (as shown in four deeds offered in evidence by defendant) and at least $1,800 in an area embraced within residence zone 1 of the ordinance (as shown by a deed offered in evidence by defendant). The question of estoppel by reason of restrictions was not presented to the trial court in the motion for dismissal or otherwise and will not be considered by us.

Defendant claims error on the ground that blank forms of deeds and land contracts were offered by plaintiff and received in evidence to show restrictions spoken of by plaintiff. Plaintiffs do not rely on these restrictions to prove their case further than to show the background and situation of the parties. Some testimony was offered and received without objection to show consistent compliance with the restrictions. The error of receiving the blank forms in evidence was, under all the circumstances, harmless.

Defendant's witness, Angus McDonald, testified on direct examination as follows:

"I was active in connection with the procuring of the zoning ordinance. I had a particular reason in trying to get the property zoned. That was to hold

the standard of the homes up to what was already built there."

By introducing this testimony on direct examination, defendant in practical effect makes such motive on the part of McDonald a part of defendant's theory of the case.  McDonald testified on cross examination as follows:

"*Q.*  I think you said in answer to Mr. Heitsch's question, Mr. McDonald, that the purpose back of this ordinance was to hold to the standard of the homes that did exist in the subdivisions at the time that the ordinance was adopted?

"*A.*  Yes, sir.

"*Q.* . In other words, to conserve the existing houses in the subdivision and it was your thought in this ordinance to prevent the building of substandard houses?

"*A.*  Naturally."

The township clerk, Carlos G. Richardson, testified as to the urge that was back of the zoning ordinance, that people who then resided in that locality, the older residents, had nice large homes, and then some Detroit concern built 50 or 70 residences of a smaller type, as small as 20 x 24, single story, that the older residents wanted residences built that were "nearer the type that they already had, claiming it was detrimental to the value of their homes, building these small homes right in the same neighborhood."

The record is convincing that the purpose shown in this testimony was the real purpose of the enactment and enforcement of the ordinance.  There was no occasion to enforce such ordinance against plaintiff Cosgrove for any other purpose.  Cosgrove's proposed dwelling is fairly commodious; the sanitary requirements seem to have been met, the size of

the lot does not indicate crowding. We consider a residence such as described in his testimony to be better than an ordinary or "average" American residence.

The township clerk, Richardson, further testified that there were 119 houses in the zoned area in Elizabeth Lake Estates and that excepting one house, he would say that the remainder would comply with the restrictions the subdividers put on the property, that the majority of the houses are neat, tidy, and that the subdivisions as a whole are well kept up and maintained. Mr. Richardson further testified:

"*Q.* As far as the health and safety of the neighborhood is concerned, is there any question in your mind that those houses are adequate to meet the needs of the persons who are living in them?

"*A.* I imagine they would be, yes, to meet the needs of those."

In *Senefsky* v. *City of Huntington Woods,* 307 Mich. 728, 742 (149 A. L. R. 1433), we say:

"Under the circumstances disclosed by this record lot owners in the Bronx subdivision ought not to be deprived of utilizing their properties in the manner undertaken by plaintiff for the reason that property rights should not be divested under the authority of a municipality's police power, unless by so doing the public health, safety or welfare would be subserved."

Further, in *Frischkorn Construction Co.* v. *Redford Township Building Inspector,* 315 Mich. 556, 562, 563, we say:

"It was further pointed out that the record in the [*Senefsky*] case indicated no justification for the attempt to enforce the ordinance against plaintiff other than a desire to enhance or protect the value

of other property in the subdivision. The case of *Wolverine Sign Works* v. *City of Bloomfield Hills*, 279 Mich. 205, was cited in this connection. It was there said: "Aesthetics may be an incident but cannot be the 'moving factor,' in determining the validity of building restrictions under the police power. Applying this principle in the case at bar the conclusion follows that the ordinance requirement as to cubical content may not be enforced against plaintiff, insofar as the construction here involved is concerned, for the purpose of establishing or maintaining property values within the zone affected. Rather, the test is whether the 'public health, safety or welfare,' would be promoted thereby. The question must be determined in each case of this character on the basis of the facts and circumstances involved. *Pere Marquette R. Co.* v. *Muskegon Township Board,* 298 Mich. 31. See, also, *Moreland* v. *Armstrong,* 297 Mich. 32, where it was said:

" 'A zoning ordinance must be reasonable, and its reasonableness becomes the test of its legality.' "

The statute under which this zoning ordinance was enacted was Act No. 302, Pub. Acts 1937, as amended by Act No. 69, Pub. Acts 1939,* which prescribed:

"Such regulations shall be made in accordance with a township plan designed to lessen congestion on the public streets, to promote public sanitation, health, safety and general welfare, and shall be made with reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the general trend and character of land, buildings and population development."

---

* Act No. 302, Pub. Acts 1937; as amended by Act No. 69, Pub. Acts 1939, was repealed by and its legislative field is occupied by Act No. 184, Pub. Acts 1943 (Comp. Laws Supp. 1945, §§ 2651–71 *et seq.*, Stat. Ann. 1946 Cum. Supp. §§ 5.2963 [1]–5.2963 [31]).

As heretofore noted, the testimony of witnesses McDonald and Richardson disclosed that the urge back of the enactment of this ordinance and its enforcement, was to conserve the property values in the immediate neighborhood. No testimony was given of any other or different purpose. By no reasonable view of the matter could it be considered that the ordinance and its enforcement tend to lessen congestion on the public streets, to promote public sanitation, health, safety and general welfare. It is highly improbable, in view of all the testimony, that the area will become blighted. Only parts of two square miles out of the township's 36 square miles are made subject to this ordinance, the rest of the township not being zoned. The ordinance in question is not a reasonable regulation for conservation of property values in the area affected. The conservation of property values is not by itself made a proper sole objective for the exercise of police power under the statute.

We find that denial to plaintiff Cosgrove of the privilege of erecting the residence which he proposed to erect, is unreasonable as an exercise of police powers. The ordinance should not be enforced against the remaining property of plaintiff Elizabeth Lake Estates for like reasons.

The decree as modified by the agreement hereinbefore spoken of, striking out all reference to sections 31 and 32, is affirmed. Costs to plaintiffs.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, NORTH, and DETHMERS, JJ., concurred.