237 Ind. 352 (1957)
146 N.E.2d 248
PUBLIC SERVICE COMMISSION OF INDIANA ET AL.
v.
INDIANA TELEPHONE CORPORATION.
No. 29,485.
Supreme Court of Indiana.
Filed December 2, 1957.
*355 Edwin K. Steers, Attorney General, and Frank E. Spencer, Deputy Attorney General, for Public Service Commission and the constituent members thereof, appellants.
Gray & Waddle, of Petersburg, and Jack E. Hayes, of Washington, for appellant Daviess-Martin Rural Telephone Corporation.
Claude M. Warren, Robert D. Armstrong, Goodrich, Campbell & Warren, of counsel, and Gilliom, Armstrong & Gilliom, of counsel, all of Indianapolis, for appellee.
ARTERBURN, J.
The issue here is one involving a conflict over territory to be served between two telephone companies: appellant, Daviess-Martin County Rural Telephone Corporation, referred to at times as the "Co-op.," and appellee, Indiana Telephone Corporation, referred to as the "Indiana Company." This is an appeal from a judgment of the trial court setting *356 aside and enjoining the enforcement of an order of the Public Service Commission in favor of the Co-op. and against the Indiana Company.
On April 5, 1951, the Public Service Commission, pursuant to statutory authority, entered an order directing all telephone companies operating in the State to file a petition with a map showing the territory they were serving and proposed to serve. It was required that the map be signed and approved by the proper official of each telephone company operating in any territory contiguous with such company's territory.
In accordance with the order, the Co-op. filed its petition and a map outlining its territory with the commission and was granted on November 9, 1951, a "Certificate of Territorial Authority" by the commission which covered the territory described (parts of Orange, Lawrence, Dubois and Martin counties) and which included the territory now in dispute, lying east of Shoals and adjoining the territory being then served by the appellee, the Indiana Company. The map was approved and signed by an authorized official of the appellee.
The Indiana Company operates a telephone system in the area surrounding Shoals and Loogootee, in Martin County. It did not, at the time, file a petition and map outlining its territory with a request for a certificate of territorial authority.
Matters stood thus until about May or June, 1954, when some large gypsum companies decided to locate their plants east of Shoals in the now disputed area and commenced construction. In October, 1953, or April, 1954 (the date is not certain from the evidence), the Indiana Company procured the signature of Bevis J. McCord, president of the Co-op., to a map which *357 outlined the territory to be served by the Indiana Company. This also included the area now in dispute in which the gypsum plants were locating, and was part of the area already covered by the certificate of territorial authority granted to the Co-op. The appellee, Indiana Company, in May or June, 1954, commenced construction of lines and telephone facilities to the new gypsum plant in the disputed territory. In August, 1954, it filed its petition for a certificate of territorial authority covering the disputed territory based on the map signed by the president of the Co-op. The appellee, Indiana Company, admits that it technically violated the statute at the time. The appellee since then has been serving these plants. The Co-op. did not construct lines to the plant until after a hearing before the Public Service Commission, which found (May 5, 1955) that the Co-op. was not then able, ready or willing to furnish immediate service to the plants in the disputed area. Neither company had previously taken any interest in or made any attempt to serve the territory and area in dispute until prospects arose of a lucrative service connected with the gypsum plants.
The petition of the Indiana Company for a certificate of territorial authority based upon the map included the area surrounding the gypsum plants, was set down for hearing by the Public Service Commission and notice given pursuant to the statute "for a certificate of territorial authority for a Shoals Exchange." Thereupon, the Co-op. filed a petition to intervene and opposed this requested certificate, alleging among other things that the signature of its president to the map of the Indiana Company was obtained fraudulently. The appellant Co-op. also filed a complaint against the Indiana Company with the Commission, asking that the Indiana Company be required to remove its telephone *358 facilities out of the disputed territory. These petitions were consolidated and heard by the Commission. After the hearing, the Indiana Company filed an amended petition, asking for a certificate of territorial authority covering a larger area which ran over to the Orange County line.
On May 5th and June 2nd, 1955, the Commission made a special finding and order which, in substance, authorized the Co-op. to serve the disputed territory in accordance with the certificate of territorial authority originally issued to it and denied the request of the Indiana Company, but required the company to continue to render service in the disputed area until such time as the Co-op. could construct suitable telephone facilities for servicing the disputed area. The Commission denied a petition for rehearing by the Indiana Company and approved a report filed by the Co-op. which showed that actual construction of facilities to render the service ordered would be completed prior to July 1, 1955. On June 18, 1955, the Indiana Company filed its action in the Martin Circuit Court to vacate, set aside, and enjoin the enforcement of the order of the Commission.
In September, 1955, the Co-op. filed a petition with the Commission which showed the construction of the lines to the gypsum companies completed and that the Co-op. was ready and able to render the telephone service in question. It also asked that the Indiana Company be directed to remove its facilities from the disputed territory. On November 4, 1955, after a hearing, the Commission ordered the Indiana Company to remove its equipment within ten days. On November 23, 1955, the Commission entered an order for the purpose of slightly correcting the language in the order of November *359 4th. On December 9, 1955, the Indiana Company filed its supplemental complaint in the trial court, setting out that since its original complaint was filed, additional proceedings had taken place before the Public Service Commission, as set forth above, including the orders of November 4th and 23rd.
The trial court, upon trial, entered on its own motion a special finding of fact, and conclusions of law and entered a judgment against the Co-op. Although we recognize by a recent rule made by this court, not yet effective, that a special finding in proceedings of this sort is helpful and an aid in considering a review on appeal, we must, under the present holdings of this court, treat a special finding not made upon request as only a general finding. The judgment and decree entered by the court (omitting the Special finding) is as follows:
"IT IS THEREFORE ADJUDGED, ORDERED AND DECREED
"1  That public convenience and necessity require that telephone service be rendered by the plaintiff Indiana Telephone Corporation in part of the disputed area which was being served by the plaintiff on May 5, 1955.
"2  That the orders made and entered by defendant Commission in consolidated causes #25590 and #25899 dated May 5, 1955, June 2, 1955, Nov. 4, 1955 and Nov. 23, 1955 and each of them, are insufficient, unreasonable and unlawful and are hereby adjudged null and void, and are hereby vacated and set aside.
"3  That the defendants and each of them be and are hereby enjoined from enforcing or attempting to enforce, against the plaintiff, any of said orders of said Commission or any of the terms and provisions therein contained, or any fines, penalties or punishment on account thereof.
"4  That the Clerk of this Court be and is hereby *360 ordered and directed to deliver a certified copy of this judgment and decree to the Chairman of the defendant Public Service Commission of Indiana, to take his receipt therefor and to file such receipt and note the filing thereof in the order book of this court.
"5  That said judgment and decree be and is hereby transmitted to defendant Public Service Commission of Indiana for further proceedings not inconsistent with but in compliance with this Judgment and Decree, for the determination by the defendant Public Service Commission of Indiana of the metes and bounds of that part of the disputed area in which public convenience and necessity require that telephone service be rendered by the plaintiff, and for the entry by the defendant Public Service Commission of Indiana of a sufficient, reasonable and lawful order in said consolidates causes.
"6  That when the defendant Public Service Commission of Indiana has entered its further order in said consolidated causes, pursuant to this Judgment and Decree, it shall certify such further order to this Court for the determination, by this Court, as to whether or not such further order is sufficient, reasonable and lawful, and as to whether or not the provisions of this Judgment and Decree have found completion.
"7  That the defendants and each of them, be and they are hereby enjoined from interfering or attempting to interfere with the plaintiff in rendering telephone service to the public within the territory referred to in this judgment, so long as the defendant Commission shall not have made and entered a sufficient, reasonable and lawful order in said consolidated causes, and so long as the provisions of this Judgment and Decree have not found completion.
"8  That this Court does hereby, retain jurisdiction to enforce this Judgment and Decree until the defendant Commission has made and entered a sufficient, reasonable and lawful order in said consolidated causes, and until the provisions of this Judgment and Decree have been complied with.

*361 "9  That the plaintiff have and recover from the defendants its costs in this cause laid out and expended in the sum of $ ____"
The assignment of errors of the Public Service Commission and the Co-op. is grounded on a motion to modify the judgment and a motion for a new trial. The motion to modify the judgment in addition to attacking the special finding, with which we are not here concerned, asks that paragraphs 1, 5, 6, 7 and 8 of the judgment be stricken out. These are the paragraphs that deal mainly with the trial court's affirmative orders to the Commission to fix the boundary lines of the territory in dispute after a finding by the court that the public convenience and necessity required the telephone services of the appellee, Indiana Company. There were further objections to the trial court retaining jurisdiction during the period in which the Commission was ordered to report its actions to the trial court.
The motion for new trial complained that the decision of the court was contrary to law and not sustained by sufficient evidence.
The contentions made in the motion to modify the judgment and the motion for a new trial cover largely the same questions and will be considered together.
Examining the judgment which the trial court made in this case, we find that paragraphs 2, 3 and 4 merely set aside, vacate and enjoin the enforcement of the order of the Commission. This was within the proper prerogative of the trial court. However, when it attempted to find "that public convenience and necessity required that telephone service be rendered by the plaintiff Indiana Telephone Corporation in part of the disputed area," it invaded the sole province of the Public Service Commission.
*362 In paragraphs 5, 6, 7 and 8 of this judgment the court then refers the matter back to the Public Service Commission and also attempts to direct the Public Service Commission to determine or fix the boundary of the area within which "the public convenience and necessity" exists, which the court has found previously. The court then states that it retains jurisdiction until the Commission has made an order that meets with its approval. A court may not substitute its opinion on a subject matter properly within the judgment or discretion of the Commission and then enter an affirmative order mandating the Commission to carry it out. Pub. Serv. Comm. of Ind. v. C.I. and L. Railway Co. (1956), 235 Ind. 394, 132 N.E.2d 698, Reh. Den. 134 N.E.2d 53; Pub. Serv. Comm. et al. v. City of Indianapolis (1956), 235 Ind. 70, 131 N.E.2d 308; State ex rel. Pub. Serv. Comm. v. Johnson Cir. Ct. (1953), 232 Ind. 501, 112 N.E.2d 429.
Appellees assert that the trial court was acting properly within its jurisdiction when it made these orders upon the Public Service Commission. In support thereof it cites the cases of State ex rel. Pub. Serv. Comm. v. Marion Cir. Ct. etc. (1953), 232 Ind. 561, 114 N.E.2d 879 and Public Service Comm. v. Ind. Bell Tel. Co. (1955), 235 Ind. 1, 130 N.E.2d 467. Both those cases concerned the fixing of rates. This is not a rate case. This action was brought by the appellees under Acts 1929, ch. 169, § 1, p. 530, being § 54-429, Burns' 1951 Replacement, and is not brought under Acts 1933, ch. 190, § 4, p. 928, being § 54-203, Burns' 1951 Replacement, which pertains to appeals and reviews from rate cases before the Public Service Commission. Under the former statute the trial court, *363 upon review of an order, is given the power under the statute by specific provisions therein to hear additional evidence and thereafter refer it back to the Commission for reconsideration and order the Commission to report to the court its further proceedings therein, but with no authority to do the same after judgment, or when no additional evidence is heard. The cases cited by the appellee do not support the right of a trial court to refer the proceeding back to the Commission with affirmative orders to be carried out under the continued supervision and jurisdiction of the court, in the absence of any power that is given specifically by the statute. The procedure followed in the Indiana Telephone and Marion Circuit Court cases was a procedure outlined and authorized by the statute, and mandate of this court. The motion to modify the judgment should have been sustained as to striking out paragraphs 1, 5, 6, 7 and 8.
We then have left in the judgment of the trial courts, paragraphs 2, 3, 4 and 9, which simply set aside, vacate and enjoin the enforcement of the order of the Public Service Commission. Such action is unquestionably within the scope of the power and jurisdiction of a trial court.
It remains, therefore, to determine whether or not this judgment and decision is supported by substantial evidence and is not contrary to law. Whether the decision of the trial court is contrary to law or is not sustained by sufficient evidence depends upon whether the order of the Commission was contrary to law and was not supported by substantial evidence. In this endeavor we must not only decide if there is the substantial evidence to support the commission's order but also we must consider whether or *364 not the order is "in violation of some applicable legal principle or rule of law." Pub. Serv. Comm. et al. v. City of Indianapolis (1956), 235 Ind. 70, 131 N.E.2d 308; 73 C.J.S., sec. 223 Public Administrative Bodies and Procedure, p. 588.
The findings of the Commission upon which its orders were based, contain the following:
"(c) That subsequent to the grant of said certificate and in the fall of the year 1953 or in the early spring of 1954 one Bevis J. McCord then President and a Director of the Daviess-Martin Rural Telephone Corporation signed a map which indicated that the territory in question could by such signing be included by the Indiana Telephone Corporation in its proposed service area."
It further stated:
"(d) That the disputed area is adjacent to the Shoals Exchange of the Indiana Telephone Corporation and that the community of interest in this area is with the City of Shoals, Indiana."
It further stated:
"(g) That the Indiana Telephone Corporation is ready, able and willing to serve the disputed territory and is now serving the same having installed therein certain equipment in the summer of 1954."
It further stated:
"(i) That immediate telephone service to the disputed area and particularly to the industrial plants located therein is necessary in the public interest."
This part of the findings stands uncontradicted. The evidence in support of these findings was undisputed. It showed that the Co-op., though granted a certificate of territorial authority, had for more than three years failed to make any attempt to serve the disputed area with telephone service and was not able or ready to do *365 so when the finding was made. The Indiana Company was able to render the service with more convenience, speed and economy than the Co-op. The Indiana Company was able to do this through the Shoals Exchange, the center of community interest for the inhabitants of the territory. This could be done without a toll charge. On the other hand, the Co-op. could provide telephone service with the community of interest only by a circuitous and lengthy route involving delay and probable toll charges.
Other findings were modified or amended to a certain extent in the subsequent orders of the Commission. One of the original findings of the Commission stated that the Co-op. was not on May 5, 1955, able, ready and willing to furnish immediate service. However, this finding was later amended and modified upon Co-op.'s filing a report that it had completed its construction work. The Commission in a subsequent order of November 4th found that construction work for the service had been completed by the Co-op., and it was ready, able and willing to serve the disputed area, and ordered the Indiana Company to remove its equipment within ten days. The Commission also found in its original order of May 5th that the Indiana Company had wrongfully invaded the disputed territory without authority and without having any certificate of public convenience and necessity, and that the Co-op. was the only telephone company that had any right to furnish telephone services in the disputed area.
We can well understand the concern over a violation by the Indiana Company of the certificate of territorial authority issued to the Co-op. However, there is no finding of the Commission that this invasion was done fraudulently or even knowingly, although the intervening *366 petition of the Co-op. presented that very issue. The Indiana Company previously had secured the consent of the president of the Co-op. to include this unserved territory in its own adjacent territory. There is nothing in the finding of the Commission to support a claim that the Indiana Company was acting in bad faith.
The controversy here cannot be treated as a dispute between private companies or individuals. These telephone companies are affected with a public interest. The public convenience and necessity is paramount, and the Commission is required to promote and protect that interest. We do not mean to infer that the Commission may not prevent violations of its orders. The public convenience, however, should not have to be sacrificed in order to inflict punishment in such a case, where there is no fraudulent, intentional or arrogant flouting of the Commission's valid orders.
Appellee (at page 38 of appellee's brief) says: "In this proceeding the Indiana Company does not seek a revocation of the Certificate of Territorial Authority issued to the Daviess-Martin Company thereon; it seeks a certificate to operate in part of said territory as a `second' telephone company."
The relevant portions of the Statute read as follows:
"In cases of conflict involving two [2] or more telephone companies the commission, considering such reports separately, or by consolidation of two [2] or more or all, shall have the power to issue its certificate after notice of hearing and a hearing.
"After the issuance of such certificate no other telephone company shall render telephone service in the area or areas so determined and defined, except pursuant to a certificate granted by the *367 commission, after notice of hearing and hearing that public convenience and necessity require that telephone service in any such area be rendered or offered by another company." Acts 1913, ch. 76, § 97, as amended by Acts 1951, ch. 158, § 1, p. 409, being Burns' § 54-601b, 1957 Supp.
There is some doubt as to the theory of appellee's petition before the Public Service Commission. In its petition it asked the Commission to issue to it "a certificate of Territorial Authority covering the territory shown on Exhibit A" (a map), not a certificate of public convenience and necessity. To avoid any confusion, it would have been quite simple for the appellees to have asked for a certificate of public convenience and necessity to serve as a second utility in the area.
After the hearing before the Commission, the appellee filed an amended petition asking for a larger area which extended over to the Orange County line. Without hearing further evidence, the Commission then made a finding which, among other things, stated "That the disputed area is adjacent to the Shoals exchange of the Indiana Telephone Corporation and that the community of interest in this area is with the City of Shoals, Indiana." We ask, is this "disputed area" that described in the original petition and map upon which the testimony was heard, or that much larger area described in the amended petition filed after the hearing, or some lesser area? The finding is too indefinite in this particular.
Still another deficiency also appears, particularly in connection with the theory of the appellee that its petition is a request to serve as a "second" company in the disputed area. Such a determination involves more than merely community interest or public convenience. It involves the financial effects upon *368 the two telephone systems and other economic considerations. Farmers', etc. Tel. Co. v. Boswell Tel. Co. (1918), 187 Ind. 371, 119 N.E. 513; Chicago, etc. R. Co. v. Public Service Commission (1918), 188 Ind. 334, 121 N.E. 276, 123 N.E. 465.
The findings of the Commission are too indefinite and insufficient as a basis for the issuance to the appellee of any certificate (whether of territorial authority or of public convenience and necessity). It is not for the court to decide what kind of a certificate, if any, should be granted or revoked by the Commission acting within its sphere of discretion. Penn. Greyhound Lines v. Public Service Comm. (1940), 217 Ind. 221, 27 N.E.2d 348.
The Public Service Commission performs a legislative function and is not a part of the judicial division of our government.
"The purpose of a judicial review of an administrative order by the court is not to decide the matter on the merits for the administrative body but rather solely to determine whether or not the order made by the administrative body was outside the limits and jurisdiction of such body. Once the matter of jurisdiction is determined the court has no further right to interfere with an administrative procedure which belongs to another department of the government  not the judiciary. As a court, we have no right to substitute our judgment on the merits of an issue before an administrative body acting within its jurisdiction.
...
"The remedy for any disappointment or unsatisfactory results before an administrative body which is acting within its jurisdiction is with the Legislature and not the courts." Pub. Serv. Comm. of Ind. v. C., I. and L. Railway Co. (1956), 235 Ind. 394, 404, 405, 132 N.E.2d 698.

*369 "But our constitutional provisions on the separation of powers of government invalidate the second paragraph of the judgment whereby the Commission was ordered to grant the petition and approve the sale of the certificate." State ex rel. Pub. Serv. Comm. v. Johnson Cir. Ct. (1953), 232 Ind. 501, 508, 112 N.E.2d 429.
There may be rare instances, as urged by appellee, when a party in a judicial review of an administrative order denying relief is entitled to mandate compelling affirmative action on the part of the Commission, but this is not a case where the evidence is undisputed and the findings of the Commission so certain and definite that they lead only to one conclusion and to an order which the Commission fails or refuses to make. We need not speculate upon or decide such a hypothetical question here.
Although the trial court was not authorized to grant the appellee the relief asked in its petition before the Commission, the court did have the duty to determine whether or not the order made in favor of the Co-op. was supported by substantial evidence and to examine the Commission's findings for that purpose. The findings of public necessity, convenience and community of interest with ability to serve were in favor of the appellee, Indiana Company, while no such total or combined finding was made for the Co-op. This results in the order of the Commission in favor of the Co-op. not being supported by substantial evidence and in being contrary to law.
Therefore, when the Commission's orders reached the trial court for review, it properly set aside the orders because they were "insufficient, unreasonable and unlawful." We might further suggest that the findings of the Commission to support the orders were also indefinite, if not conflicting. However, the trial court *370 could not grant appellee, Indiana Company, the affirmative relief which it requested of the Commission. That is the prerogative of the Commission, at least so long as the evidence is conflicting and there is left any area of discretion.
Upon vacating, setting aside, and enjoining the enforcement of the Commission's order the proceedings are still pending before the Commission for further consideration and action, with an opportunity to correct the insufficiencies in the findings and other irregularities in the proceedings, as pointed out upon judicial review.
The judgment of the trial court to the extent that it sets aside, vacates, and enjoins the enforcement of the orders of the Public Service Commission, as set forth in paragraphs 2, 3, 4 and 9 thereof is affirmed, with directions that paragraphs 1, 5, 6, 7 and 8 thereof be stricken out of the judgment.
Emmert, C.J., Landis and Achor, JJ., concur.
Bobbitt, J., concurs in result.
NOTE.  Reported in 146 N.E.2d 248.