BOARD OF ZONING APPEALS ET AL. *v.* SCHULTE, ARCHBISHOP ETC.

[No. 29,919. Filed February 7, 1961.]

340

*John D. Hughes, Floyd W. Burns, Clyde L. Peterson, Charles W. Culp* and *Cadick, Burns, Duck & Neighbours,* of counsel, all of Indianapolis, for appellants.

*Frank M. McHale, John I. Bradshaw* and *McHale, Cook, Welch & McKinney,* of counsel, all of Indianapolis, for appellee.

ARTERBURN, J.—The appellee, desiring to build a Catholic church, school, priests' dwelling and sisters' home upon an 18-acre tract which the church has owned since 1948, petitioned the Board of Zoning Appeals of the Town of Meridian Hills for that purpose. There was opposition to the granting of a petition and the Board, after a hearing, denied the request. An administrative appeal was taken to the trial court, which reversed the action of the Board of Zoning Appeals, and from this adverse ruling the Board of Zoning Appeals and certain remonstrators have appealed. The appellee claims that the Board of Zoning Appeals has unconstitutionally applied the zoning ordinance in the instant case.

It appears that the Town of Meridian Hills is a suburban area adjacent to the City of Indianapolis. It is conceded to be one of the most desirable, close-in, suburban locations in the Indianapolis area and enjoys a semi-rural setting with a quiet, peaceful, residential atmosphere. The testimony warrants the conclusion it was zoned primarily for that purpose. For the most part, single family residential homes which cost in the neighborhood of $50,000 or more to construct are located in the area of the Catholic Church's property under consideration.

It is pointed out in appellants' brief that besides the peaceful amosphere of the neighborhood contiguous to appellee's lot and the greater value and attractiveness

of the homes facing these properties, the area is unique in still another respect:

> "Only three of the houses bordering on the side of the proposed parish plant have sufficient bedrooms and are of sufficient size to accommodate families with children. Almost all the homes have only two or three bedrooms."

The tract in question is located on 75th Street where there is very little traffic now disturbing the residents. It is pointed out that some of the remonstrators have offered to procure for the proposed church and school an alternative site of approximately the same area, which is on 73rd Street about three blocks distant and which is outside the town limits. The alternative proposed site is on a more heavily traveled main highway and is immediately adjacent to a junior high school. A considerable portion of the briefing has been spent on the merits of the alternative site, which we do not believe is material under the legal issues raised here. A person may not be excluded from a zone on the ground he could find just as good a site outside the area. *State ex rel. Synod of Ohio* v. *Joseph* (1942), 139 Ohio St. 229, 39 N. E. 2d 515, 138 A. L. R. 1274; Rhyne, *Municipal Law*, sec. 32-48, p. 852.

The appellee states that the uncontradicted evidence shows that the proposed construction will cost approximately one million dollars and is designed so as to comply with all applicable building regulations, including height and setback lines. The plans also provide for adequate and ample off-street parking facilities in a shrubbery-enclosed lot, with sufficient means of ingress and egress so as to avoid traffic congestion. There is no evidence pointed out to us that the sanitary, health and safety requirements with reference to the proposed project have not been met in every respect.

The appellants contend that the proposed Catholic school and church will have an injurious effect upon the surrounding residential property by depreciating its value.

The evidence on the part of the appellants in this respect consists of the testimony of two or three witnesses, which states in substance "that the proposed parish plant would cause substantial and permanent injury to the property bordering upon the appellee's land." Mr. H. L. Bartholomew, engaged in the construction business, testified there would be a "depreciated value" in the amount of 20% to such residential property. Mr. Claude O. Crawford, a professional appraiser, testified in substance the decrease in value of the surrounding homes would amount to 16% to 20%.

The trial court, in its special findings of fact, refused to accept such evidence as substantial in support of the Board's decision on the ground that it was "but a shred of evidence" and the witnesses gave no specific instance in which a church or school had been constructed in an area of expensive residential homes that had thereafter actually caused a depreciation in value.

The record revealed that the Catholic church had acquired the property eleven years prior thereto, when there was only one house existing on the perimeter of the property; that at the time it posted a sign of its intention to build a church and school on the site; that since that time, residences had been built on the adjoining property with the full knowledge of the owners of the use to be made of the church and school site; that in fact, all the property had increased in value during that period of time, some as much as 100% in the past four years.

At the time appellee's petition was pending before the Board it was shown that there were two other

churches in the Town of Meridian Hills, a Congregational Church located at 71st and North Pennsylvania Streets and a Hebrew Temple (erected after the overruling of an adverse Zoning Board's decision by the Marion Superior Court), and a third church (the Second Presbyterian Church) was under construction on property immediately contiguous to and adjoining the property owned by the appellee. The appellee claims there has been an arbitrary and discriminatory decision by the Board of Zoning Appeals, excluding the Catholic church and school from the community.

In resolving any issue of fact on appeal in this court we may not weigh the evidence, but can only determine whether or not there is any substantial evidence which is competent as a foundation for the decision or ruling of the administrative board. *Pub. Ser. Comm. et al.* v. *City of Indianapolis* (1956), 235 Ind. 70, 131 N. E. 2d 308; *Pub. Serv. Comm. of Ind. et al.* v. *Ind. Tel. Corp.* (1957), 237 Ind. 352, 146 N. E. 2d 248; *Mann* v. *City of Terre Haute* (1960), 240 Ind. 245, 163 N. E. 2d 577; *Bd. of Zon. App.* v. *School City of Mishawaka* (1957), 127 Ind. App. 683, 145 N. E. 2d 302.

The zoning ordinance in question provides:
"Class U-1 uses: (Residence)
1. Dwelling.
2. Church, school, library, community center, private club (excepting a club the chief activity of which is a service customarily carried on as a business).
3. Public park, public playground, water supply reservoir, well or tower.
4. Green house, nursery, truck gardening."

Thereafter a special clause provides:

"(b) In a residence district no building shall be erected which is arranged, intended or designed

for a use enumerated in subdivision "2," "3" or
"4" of Class U-1 uses, unless such building is lo-
cated on a lot determined by the Board of Zoning
Appeals after public notice and hearing to be so
located that such building will, in the judgment of
said Board, substantially serve the public conveni-
ence and welfare and will not substantially or per-
manently injure the appropriate use of neighboring
property."

Analyzing these provisions, we find that a church or
school may be located in the Town of Meridian Hills,
which permits only U-1 uses, if it "substantially serves
the public convenience and welfare and will not sub-
stantially or permanently injure the appropriate use of
the neighboring property." There is no issue made here
that the church and facilities as proposed do not serve
the "public convenience and welfare." The issue is—
does such use "substantially or permanently injure the
appropriate use of the neighboring property" and is
that a constitutionally valid reason for excluding a
church and its facilities, including the school?

In this state it has been decided that facilities that
go with the church of the particular denomination may
not be excluded if the church is admittable. For
example, a recreation building and playground
in connection with the Meridian Street Methodist
Church (*Keeling* v. *Board of Zoning Appeals* (1946),
117 Ind. App. 314, 69 N. E. 2d 613) and a "sisters'
home" for the teachers in a Catholic church-school
(*Board of Zoning Appeals* v. *Wheaton* (1948), 118 Ind.
App. 38, 76 N. E. 2d 597). In the latter case it is said:

"We are of the opinion that a convent or 'sisters'
home' must be considered an integral part of any
Roman Catholic church project, which is composed
of four component parts, *viz.*: church, priests'
mansion, a 'sisters' home,' and school."

The section of the zoning ordinance applicable in each of the above cases is similar, if not exactly the same as that before us in this case.

In viewing the evidence, as we must, most favorable to the Board, we conclude its action could only be based upon the evidence that the property in the neighborhood would be depreciated by approximately 20% if the Catholic church and facilities are located as proposed. The contention, that is touched upon rather lightly, that the proposed church and facilities should be located on the alternative site on 73rd Street, (where the traffic is heavier) in order not to disturb the neighborhood of 75th Street, where the traffic, it is admitted, is lighter, does not suggest any valid reason in law for the action of the Zoning Board. Traffic safety, particularly for children, is a matter of general public concern and far outweighs the private interest involved in a quiet neighborhood. It likewise occurs to us that the fact that the 75th Street area might be one in which families with few children or no children are to be found, could not be made the basis for excluding from such area projects of public welfare, such as the church and facilities, in which children are involved. To exclude children's activities by zoning restrictions from areas would appear to us to be the converse of what normally is considered general public welfare.

The education, morally and spiritually of children, is a matter of great public concern and private interests, although important, should not outweigh such general public welfare. The law has always considered itself the special guardian of the young and gives important consideration to their requirements in the interest of the common good and general welfare. We do not feel that any zoning board may zone on the

basis that children are undesirable in certain areas and that families without children should be protected against such intrusions. Metzenbaum, *Law of Zoning* (2d Ed.), Vol. 1, at 1454; Yokley, *Zoning Law and Practice* (2d Ed.), Vol. 2, sec. 247, at 141.

Thus eliminating the issue of traffic safety and the exclusion of children as any competent legal reason for the Board's action, we have left only the question of whether or not the action of the Zoning Board in excluding the church and facilities in question, may base its decision upon evidence that the property values in the neighborhood will be depreciated thereby, assuming such evidence to be true.

Zoning ordinances must find and support their validity in the police power of the state, which can only be exercised in the general public interest of safety, health and morals. Rights to the use of private property may not be restricted except upon such basis. It was never intended that zoning laws should be used for the purpose of creating special privileges or private rights in property which result from creating an exclusive community.

As stated by the Supreme Court of Michigan:

". . . The conservation of property value is not by itself made a proper sole objective for the exercise of police power under the statute." *Elizabeth Lake Estates* v. *Waterfore Township* (1947), 317 Mich. 359, 369, 26 N. W. 2d 788, .792; See also: *Frischkorn Const. Co.* v. *Lambert* (1946), 315 Mich. 556, 24 N. W. 2d 209; *Simon* v. *Town of Needham* (1942), 311 Mass. 560, 42 N. E. 2d 516, 141 A. L. R. 688; Yokley, *Zoning Law and Practice* (2d Ed.), Vol. 1, sec. 35, at 58.

The resulting depreciation in value to certain private property as a result of the passage of a zoning ordi-

nance which is for the general welfare, health or safety, is not a ground for unconstitutionality.

C. J. S., *Zoning*, Sec. 37, p. 744; *Euclid* v. *Ambler Co.* (1926), 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016; Rhyne, *Municipal Law*, sec. 32-25, p. 891.

In the Euclid Case above it was specifically shown that the restrictions destroyed part of the value of the owner's property, yet the showing was made that the restrictions (excluding commercial uses) were for the general welfare, safety and health. It would seem that the contrary would also be true—that if a use is shown to be without question for the good of the public and general welfare, that no owner of private property adjacent or in the neighborhood, could complain because the value of his property might be thereby depreciated to some extent, since the purpose of the zoning laws is not to protect private, personal interest, but rather to protect and promote the general public interest.

In *State, ex rel.* v. *Joseph* (1942), 139 Ohio St. 229, 249, 39 N. E. 2d 515, 524, 138 A. L. R. 1274 it is said:

". . . It is true many people prefer not to reside next door to a church. But the way legally to effectuate this desire is by private mutual covenants between property owners imposing appropriate servitudes on land. We must not 'employ the new device of zoning to make exclusive districts much more exclusive.' Bassett on Zoning, p. 72. We do not believe it is a proper function of government to interfere in the name of the public to exclude churches from residential districts for the purpose of securing to adjacent landowners the benefits of exclusive residential restrictions." *Nectow* v. *Cambridge* (1928), 277 U. S. 183, 48 S. Ct. 447, 72 L. Ed. 842; *Keeling* v. *Bd. of Zoning Appeals* (1946), 117 Ind. App. 314,

69 N. E. 2d 613; *Matter of Community Synagogue* v. *Bates* (1956), 1 N. Y. 2d 445, 154 N. Y. S. 2d 15, 136 N. E. 2d 488.

We judicially know that churches and schools promote the common welfare and the general public interest. The Constitution of the United States and the State of Indiana protect the right of freedom of worship.

The Constitution of the State of Indiana reminds the General Assembly that "Knowledge and learning, generally diffused throughout a community, being essential to the preservation of a free government;" enjoins upon that body the duty "to encourage by all suitable means, moral, intellectual, scientific, and agricultural improvement; . . ." Constitution of Indiana, Art. 8, §1.

We have said:

> "The law is well settled that the building of a church may not be prohibited in a residential district. (Cases cited.)
>
> "If the refusal of the zoning board to grant a variance results in the exclusion of a church from a residential district, such action is illegal and must be reversed . . ." *Bd. of Zoning Ap. of Decatur* v. *Jehovah's Witnesses* (1954), 233 Ind. 83, 91, 117 N. E. 2d 115, 119.

This court, in *Bd. of Zoning Ap. of Decatur* v. *Jehovah's Witnesses, supra,* had before it the question of whether or not a church may be excluded from a residential zone. Under the provisions of the zoning law, the church had not provided sufficient off-street parking for the use of its proposed building. This court stated (p. 92):

> "When, under the facts in this case, the welfare and safety of the people in the neighborhood is placed in the scales of justice on one side, and the right and freedom of worship and assembly is

placed on the other, the balance weighs heavily on the side guaranteeing the right to peaceful assembly and to worship God according to the dictates of conscience, regardless of faith or creed."

In the Jehovah's Witnesses Case we had the issue of whether or not traffic safety for the public in general should outweigh the public welfare and interest in church and moral betterment, and held that the former could not outweigh the latter. Here we do not have the factor of public safety to consider, but rather the private interest in protecting property from depreciation to some extent and a desire to keep a neighborhood as exclusive as possible. Such interests, although important, do not have the characteristics of general welfare as predominant as do the public interests in the moral and intellectual education of the young. Using the same rationale as that suggested in the Jehovah's Witnesses Case, we feel the general public interest in the moral and intellectual education of the young far outweighs the private interest affected by any depreciation in neighboring property values.

In further support of the above proposition, an eminent authority on municipal law has said:

"Since the advent of zoning, churches have been held proper in residence districts. Both the early decisions and the more recent ones frown on the exclusion of churches from residence districts, in spite of the temporary inconvenience sometimes experienced in connection with the parking of automobiles and other inconveniences incident to the gathering of crowds in residence areas.

. . . . . .

"It is clear, however, that the cases holding that churches may be lawfully excluded from residence districts are an expression of the minority rule. The overwhelming majority of decisions in all jurisdictions other than California is to the contrary." Yokley, *Zoning Law and Practice* (2d Ed.)

Vol. 2, sec. 222, at 110, 111. To the same effect see: O'Brien v. *City of Chicago* (1952), 347 Ill. App. 45, 105 N. E. 2d 917.

Appellants cite two cases in other jurisdictions which they claim are in point: In the case of *West Hartford Meth. Ch.* v. *Zoning Board of Appeals* (1956), 143 Conn. 263, 121 A. 2d 640, the court expressly states that the constitutional question as to the exclusion of churches in residential sections was withdrawn from their consideration, although apparently the trial court had ruled thereon.

In the case of *Miami Beach United Luth. Ch.* v. *City of Miami Beach* (1955), (Fla. Sup. Ct.), 82 S. 2d 880, it appears to us that the Florida court gave no consideration to the constitutional question and, in fact, cited no cases or authorities whatever in support of its opinion and decision.

Neither party has cited the case of *Congregation Temple Israel* v. *City of Creve Coeur* (1959), (Mo. Sup. Ct.) 320 S. W. 2d 451. It is one of the more recent cases dealing with the application of zoning ordinances to churches and schools. The opinion in that case attempts to collect all the cases dealing with the problem up to that point of time. It is there held, in view of the state and federal constitutional provisions of freedom of worship and the encouragement of education, that an enabling act authorizing a city to zone should not be interpreted as granting to the Zoning Board the authority to restrict or exclude churches or schools in residence districts.

We conclude the Board of Zoning Appeals erroneously denied the petition which resulted in the exclusion of the church and its facilities in question. The trial court found that petitioner was entitled to a writ of mandate. It has been pointed out and

conceded by the appellee that this was improper and the judgment should accordingly be modified.

This cause is remanded, with instructions to the trial court to restate its findings and modify its judgment, in conformity with this opinion.

Bobbitt, C. J., and Landis and Jackson, JJ., concur. Achor, J., concurs with opinion.

## CONCURRING OPINION

ACHOR, J.—I concur in the result of the majority opinion for the reasons hereinafter stated.

1. Zoning boards may not refuse to grant variances which result in the exclusion of a church from a residential district except, possibly, under circumstances where the construction as proposed might endanger the health or safety of the public. *Bd. of Zoning Ap. of Decatur* v. *Jehovah's Witnesses* (1954), 233 Ind. 83, 117 N. E. 2d 115.

2. Activities or building, which are by tradition and custom, integral or component parts of a particular church or house of worship, may not be excluded. *Keeling* v. *Board of Zoning Appeals* (1946), 117 Ind. App. 314, 69 N. E. 2d 613; *Board of Zoning Appeals* v. *Wheaton* (1948), 118 Ind. App. 38, 76 N. E. 2d 597.

NOTE.—Reported in 172 N. E. 2d 39.