This case involves the power of a municipal zoning authority to grant a special exception to a landowner to permit the construction of a church parking lot on a lot zoned for residential purposes and located across the street from the church.
We issued the writ of certiorari to review the Court of Civil Appeals' holding that, under the terms of the city ordinance regulating accessory uses, the lot across the street could not be used as a parking lot because it was separated from the lot on which the church was located. 567 So.2d 1351 We affirm.
The case arises out of a decision by the City of Fairhope's Board of Adjustment and Appeals (hereinafter the "Board") that granted a special exception to the zoning ordinances for the construction of a church parking lot by the First Baptist Church of Fairhope on a lot located across the street.[1]
Landowners who lived adjacent to the subject lot appealed to the circuit court for a trial de novo, and that court granted the Board's summary judgment motion, thereby upholding the Board's grant of the special exception. The landowners then appealed to the Court of Civil Appeals, and that Court reversed, finding that "[t]he land use involved, a parking facility, in a residential district in Fairhope is a forbidden use under the present ordinance, and as such would require the granting of a variance."[2] The Board filed a petition for writ of certiorari with this Court. We now review what is, insofar as we can tell, a case of first impression concerning accessory uses of lots and the requirement that an accessory use be located on the same lot.
The property in question lies in an "R2 medium density single-family residential district," across the street from the First Baptist Church of Fairhope. See Appendix A. The church offered to buy the property in question, contingent upon the owner's obtaining permission from the Board for the construction of a parking facility for use by the members of the church. The owner applied to the Board for a special exception, which was granted. The grant of that special exception is the subject matter of this appeal.[3] The church then purchased the property.
At the outset, we note that "statutes or ordinances which impose restrictions on the use of private property are strictly construed and their scope cannot be extended to include limitations not therein included or prescribed." Smith v. Cityof Mobile, 374 So.2d 305, 307 (Ala. 1979). We agree with the Court of Civil Appeals that *Page 1355 Smith stands for the proposition that land use restrictions are to be strictly construed. However, we take this opportunity to note that the full context of the Smith quote indicates that land use restrictions are to be strictly construed in favor ofthe landowner.
We agree with the Court of Civil Appeals that if the use of the lot as a parking lot is a forbidden use, then that use may not be authorized by a special exception. A special exception is a conditionally permitted use, that is, it is an enumerated use specified in the zoning ordinances that requires the approval of an administrative board or agency. A special exception "allows a property owner to put his property to a use which the regulations expressly permit under conditions specified in the zoning regulations themselves." 101A C.J.S.Zoning Land Planning § 229, p. 656 (1979). This contrasts with a "variance," which requires a showing of unnecessary hardship and results from a request that the zoning authorities grant relief from the literal requirements of the zoning ordinances. Ex parte Chapman, 485 So.2d 1161 (Ala. 1986).
The Board argues that although a parking lot is not a permitted use of the subject property, a church is a permitted use in a residential zone; therefore, it reasons that a parking lot would be permitted as an accessory use by the church.
Our research indicates that this Court has not decided the exact issue now presented, but we conclude that the Court of Civil Appeals correctly determined that because "the proposed use, a parking facility, is not 'on the same lot . . . with the principal use or structure' as required under the zoning ordinance," the use was not a permitted use.
The uses of property permitted in particular zones include accessory uses customarily incident to the permitted use, and, as the Court of Civil Appeals pointed out in its opinion, Section 2.2.001 of the City of Fairhope zoning ordinance defined an "Accessory Use or Structure," as "[a] use or structure on the same lot with, and of a nature customarily incidental and subordinate to, the principal use or structure." (Emphasis added.)
The definition of "accessory use" in the ordinance is consistent with the general rule that "the accessory use must be located on the same lot as the building to which it is accessory." 101A C.J.S. Zoning Land Planning, § 148, p. 466. See also, Sexton v. Bates, 17 N.J. Super. 246, 85 A.2d 833
(1951), affirmed, Sexton v. Essex County Ritualarium, 21 N.J. Super. 329, 91 A.2d 162 (1952), in which a permit for a mikvah or ritualarium on a separate lot from the synagogue was struck down because, under the terms of the zoning ordinances, an accessory use must be located on the same lot with the building to which it is accessory.
We recognize, of course, that in some cases the use of property for a parking lot has been allowed as incidental to a permitted use for a church,[4] but in each of those *Page 1356 
cases, however, the factual situation has been different from the one presented here.
We conclude, therefore, that the logic of the opinion of the Court of Civil Appeals is sound and that that court's judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.
[1] We note that the Court of Civil Appeals found that "[i]t is uncontested that the property at issue is located across the street and on the block north of the church itself." For a better understanding of the location of the subject property, we attach, as Appendix A, an exhibit showing the location of the church and the subject property sought to be used for a parking lot.
[2] A city ordinance required that all accessory uses be located on the same lot with the building or structure to which the uses are accessory, as we shall show later in this opinion.
[3] There was some dispute over whether a special exception or a variance was granted. Although the Board orally voted to grant a "variance," both the written request and the formal written decision of the Board referred to a "special exception." We agree with the Court of Civil Appeals that it appears from all the evidence that a "special exception" was granted.
[4] In Appeal of Hoffman, 66 Pa.Com. 7, 444 A.2d 764 (1982), a Commonwealth Court of Pennsylvania found in a similar case that a parking facility was part of a church complex and should be allowed. That court found that "the proposed parking facilities . . . would clearly serve the church's principal use, namely, a religious use." 444 A.2d at 766. The Supreme Court of Idaho held in Corporation of Presiding Bishop v. Ashton, 92 Idaho 571, 448 P.2d 185 (1968), that the construction of two lighted softball fields by a church for use as a church recreation facility could be considered a part of the church for zoning purposes. In summing up a long line of cases, the Idaho court found that "the scope of the term 'church' is broader than the church building itself and that activities related to the church itself are permissible in a residential area."448 P.2d at 188. In Board of Zoning App. of Town of Meridian Hills v.Schulte, 241 Ind. 339, 172 N.E.2d 39 (1961), the Indiana Supreme Court held that the construction of a church building, school, and living quarters for both priests and sisters could not be excluded from a residential area. The Indiana court found that "facilities that go with the church of the particular denomination may not be excluded if the church is admittable." 241 Ind. at 346, 172 N.E.2d at 42. See, also Boardof Zoning Appeals of City of Indianapolis v. Wheaton,118 Ind. App. 38, 76 N.E.2d 597 (1948); Keeling v. Board of ZoningAppeals of City of Indianapolis, 117 Ind. App. 314,69 N.E.2d 613 (1946). *Page 1357 
[EDITORS' NOTE: The map IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 1358