CRAWLEY, Judge.
S.H., a student at Phil Campbell High School in Franklin County, appeals from an order of the juvenile court adjudicating her as a child in need of supervision (“CHINS”) and placing her on probation. We affirm.
On December 6, 2002, Gary Williams, the truant officer of Franklin County, signed a verified complaint charging that
“[S.H.] has been tardy from Phil Campbell School, Franklin County on 10 different occasions, in violation of the Alabama School Compulsory Attendance Law (§ 16-28-3) of the Code of Alabama, against the peace and dignity of the State of Alabama.
“In the foregoing said child is in need of supervision, treatment, rehabilitation, care or the protection of the State.
“Charge: CHINS/Truancy 012-015-001(4).”
S.H. answered the complaint and entered a plea of “not guilty.” Following a bench trial, the court entered an order that states:
“The allegations in the petition ... are true beyond a reasonable doubt.
“Said child is hereby adjudged to be CHINS.
“Said child is placed on probation beginning 1/23/03. If the juvenile complies with the conditions set forth in this order, she will be considered for release at the end of the school year.
“[Listing 16 conditions of probation].”
I.
Initially, we must address Presiding Judge Yates’s dissent, which states that, because the juvenile court treated this truancy/CHINS proceeding “as a criminal matter,” the appeal should be transferred to the Court of Criminal Appeals. To the extent that the juvenile court did treat the proceeding as a criminal matter, that treatment was authorized- — in fact, mandated — by our statutes relating to the procedure for CHINS petitions in juvenile courts.
Section 12-15-1(4), Ala.Code 1975, defines a “child in need of supervision” as one who:
“a. Being subject to compulsory school attendance, is habitually truant from school.
“b. Disobeys the reasonable and lawful demands of the child’s parents, guardian, or other custodian and is beyond their control.
“e. Has committed an offense established by law but not classified as criminal or one applicable only to children.
“d. In any of the foregoing, is in need of care or rehabilitation.”
(Emphasis added.) Subsections (a) and (c) of § 12-15-1(4) contemplate the kind of proceeding that occurred in this case — one initiated by a complaint charging an “offense,” such as truancy, that is not classified as criminal or that is applicable only to children. The juvenile court applied a “beyond-a-reasonable-doubt” evidentiary standard for establishing the predicate “offense” because that standard is mandated by § 12-15-65(e), Ala.Code 1975. At a hearing on a CHINS petition, the State must first establish, by “proof beyond a reasonable doubt, based upon competent, material, and relevant evidence, that a *1113 child committed the acts by reason of which the child is alleged to be ... in need of supervision.” § 12-15-65(e) (emphasis added). If the juvenile court determines that the child committed the acts alleged, the juvenile court “may proceed immediately to hear evidence as to whether the child is in need of care or rehabilitation.” Id.
Once the predicate act or “offense” has been established by proof beyond a reasonable doubt, however, a “civil” evidentia-ry standard is applicable. The State must establish, by “clear and convincing evidence, competent, material, and relevant in nature, that the child is ... in need of care or rehabilitation as a ... child in need of supervision.” § 12 — 15—65(f), Ala.Code 1975 (emphasis added).
If the juvenile court finds that the State has established the first part of its case by proof beyond a reasonable doubt, and the second part of its case by clear and convincing evidence, then it may “proceed immediately, in the absence of objection showing good cause or at a postponed hearing, to make proper disposition of the case.” Id. Disposition of a CHINS proceeding is governed by § 12-15-71(c), Ala. Code 1975. That section provides, in pertinent part:
“(c) If a child is found to be ... in need of supervision, the court may make any of the following orders or dispositions for the child’s supervision, care, and rehabilitation:
“(1) Permit the child to remain with the parents, guardian, or other custodian of the child, subject to the conditions and limitations the court may prescribe;
“(2) Place the child on -probation under conditions and limitations the court may prescribe;
“(3) Transfer legal custody to any of the following:
[[Image here]]
“(4) Make any other order as the court in its discretion shall deem to be for the welfare and best interests of the child....
“(5) Direct the parent or custodian of the child to perform such reasonable acts as are deemed necessary to promote the best interest of the child.”
(Emphasis added.)
Although some of the procedural aspects of this CHINS proceeding may have had the trappings of a “criminal” case, it is clear that the juvenile court was following the procedure mandated by our statutes and that this court, pursuant to Rule 28(A)(2), Ala. R. Juv. P., has subject-matter jurisdiction of the appeal. That rule provides:
“If the appeal provided in this subsection is taken from a final order, judgment, or decree in a case or proceeding arising out of the jurisdiction of the juvenile court over a child, as that term is defined in § 12-15-1(3), Ala.Code 1975, the appropriate appellate court for purposes of the appeal shall be (a) the Court of Criminal Appeals in proceedings in which a child is adjudicated delinquent and proceedings in which a motion seeking an order to transfer a child to the adult court for criminal prosecution is either granted or denied, and (b) the Court of Civil Appeals in any other case or proceeding.”
(Emphasis added.)
At trial, the evidence established that S.H. had been late to school on 10 occasions totaling 40 minutes. William R. Smith, the principal of Phil Campbell High School, explained that the morning tardy bell rings at 7:53 a.m. and that any student who arrives after that time is tardy. He *1114 testified that his records indicated the following late arrival times for S.H.:
September 9.7:56 September 26.7:56
September 13.7:55 November 1.7:57
September 17.8:00 November 8.7:55
September 19.8:04 November 14.7:57
September 25.7:55 November 15.7:55
The record contains portions of the Student Code of Conduct/Handbook (“the Handbook”) approved by the Franklin County Board of Education. Article 4 of the Handbook states that student misconduct is “grouped into three classes (Class I, Class II, and Class III), which range from the least to the most serious.” Article 4, § 1.05, categorizes “excessive tardiness and repeatedly reporting late to school or class” as a Class I violation. Article 4, § 2b. sets out the following “disciplinary actions” for “minor” or Class I violations:
“b. Secondary students in grades 7-12
“1) First Offense for grades 7-12
“In-school conference and parental contact when warranted. Special circumstances may warrant disciplinary action as outlined under subsequent offenses.
“2) Subsequent Offenses for grades 7-12
“In-school disciplinary action, such as probation, detention, completion of extra academic assignments, work assignments before or after school, in-school suspension, corporal punishment, or suspension at the discretion of the principal or his/her designated person(s). Special circumstances may warrant a recommendation to the School Board’s hearing officer for an alternative educational program apart from the normal setting.”
“Truancy” is defined at page 21 of the Handbook as “the habitual and unlawful absence from school.” Another section of the Handbook, entitled “Early Warning Program,” states:
“EARLY WARNING PROGRAM
(Grades K-12)
“The Alabama Compulsory School Attendance Law, Code of Alabama, Section 16-28-03 (1975) requires children between the ages of seven and sixteen to enroll and attend school. Additionally, the Code of Alabama, Section 16-28-12 (1975), as amended May 17, 1993, requires that any parent/guardian who enrolls a student in school be responsible for the child’s regular attendance in school and proper conduct there.
“... It is the parents and/or guardian’s responsibility to assure that any absence of the student is considered an ‘excused absence’ pursuant to the policy of the school system. If the parent or guardian fails to provide the necessary information to assure the absence is excused and it is recorded as unexcused, court intervention may result.
[[Image here]]
“To implement the requirements of the Code of Alabama, Section 16-28-03 et seq (1975) your school system, district attorney and juvenile court have implemented an Early Warning Program. Please be advised that all students in grades kindergarten through twelve are subject to the provisions of this program.
“The following procedures for handling truancy and/or conduct problems shall be administered throughout the Franklin County School System.
“1. First truancy per semester (unexcused absence): Teacher shall caution student about truancy and subsequent action to be taken by the school and courts should there be other unexcused absences.
“2. Second truancy per semester (unexcused absence): The school authorities shall notify the parent of the date that the student was truant. *1115 Students who have consecutive unexcused absences, which make their total unexcused absences three or more, will receive a letter from the principal and a ‘Notice to Appear’ in the Early-Warning Program at the same time.
“3. Third truancy per semester (unexcused absence):
“a. The parenVguardian or person within control of the said child shall participate in the Early Warning Program provided by the juvenile court.
“b. Attendance at this conference shall be mandatory.
“c. Failure to appear at the Early Warning Program shall result in the filing of a complaint/petition against the child and/or parent/guardian.
“d. ANY UNEXCUSED ABSENCE BY THE STUDENT FOLLOWING THE ATTENDANCE OF THE STUDENT AND PARENT/GUARDIAN AT THE EARLY WARNING PROGRAM WILL RESULT IN A PETITION BEING FILED AGAINST THE CHILD ALLEGING TRUANCY AND/OR A COMPLAINT AGAINST THE PARENT/GUARDIAN REQUESTING CRIMINAL SANCTIONS.
“4. Students and parents who accumulate 5 unexcused tardies per semester may also be required to attend the Early Warning Program.
“5. Students and parents who accumulate ‘excessive questionable’ excused absences may also be required to attend the Early Warning Program.”
(Capitalization original; emphasis added.)
At trial, Truant Officer Gary Williams explained the Franklin County School Board’s policy with respect to the Early Warning Program. Williams stated that he receives a letter from the school when a student has been tardy five times in a semester; that he notifies the student and parent of the school board’s requirement to attend the juvenile court Early Warning Program; that he monitors attendance at the Early Warning Program; and that, if the student is tardy one more time after participating in the Early Warning Program, Williams files a CHINS petition in the juvenile court.
The school principal, William Smith, testified that he followed the Franklin County School Board’s policy by sending S.H. a letter and by notifying the county truant officer after S.H. had accumulated five unexcused tardies to school. He further testified that, although the school board’s policy would allow for the filing of a CHINS petition as soon as a student was tardy again after having completed the Early Warning Program, he waited until S.H. had accumulated five more tardies before notifying the truant officer. Smith testified that, before he notified the truant officer that S.H. had been tardy the first five times, he had sent S.H. to Phil Campbell High School’s “Saturday School” as a disciplinary measure after the first three times she was tardy.
On cross-examination, Smith conceded that he had neither sought an explanation from S.H. as to the reason for her tardiness nor attempted to contact S.H.’s father to discuss the matter. When he was asked whether he had had an “in-school conference” with S.H. or had made “parental contact” with S.H.’s father concerning her tardiness, as mentioned in Article 4, § 2b. of the Handbook, Smith replied that he had not undertaken either action. He said that § 2b. did not require those actions unless they were “warranted” and, he said, he did not think the actions were warranted in this case.
S.H. admitted that she was late to school on the occasions listed by the principal. She explained that she lives with her fa *1116 ther, who drives her to school every day. She said that her father awakened her in the morning, but she was not always ready for school on time because, on some days, she experienced pains that made it difficult for her to move quickly. She stated that her physician had diagnosed her with enlarged ovaries and an infected uterus and had prescribed medication for her. She said the medication had helped; she had not been tardy since she had begun taking the medication. She testified that, before the CHINS petition was filed, no one at school had asked her why she was tardy or cautioned her about the consequences of repeated tardiness.
On appeal, S.H. does not argue that the evidence was insufficient to support a finding that she was an “habitual truant” or a CHINS. She presents four issues: (1) that she was denied certain statutory rights and due-process rights when the school principal submitted her name to the truant officer for attendance at the Early Warning Program after she had accumulated five tardies; (2) that the principal failed to exercise his independent judgment on the issue of whether she was an habitual truant before he initiated proceedings resulting in the filing of the CHINS petition; (3) that the juvenile court erroneously excluded evidence tending to show that similarly situated students at another Franklin County high school were not treated as CHINS for being tardy five or more times per semester — evidence that, she claims, establishes that she was denied the equal protection of the law; and (4) that she, being over the age of 16 and not required to attend school, is not subject to the truancy laws contained in § 16-28-1 et seq., AIa.Code 1975.
II.
S.H. argues that the school principal failed to investigate the cause of her tardiness before he set in motion the events that led to the filing of the CHINS petition. She claims that this failure to investigate violated three provisions of the Alabama Compulsory School Attendance Law (§§ 16 — 28—12(b); 16-28-13; and 16-28-16(a)). She also maintains that the school principal denied her the due process of the law that, she says, is guaranteed by the progressive-discipline policies of the Handbook.
We hold that none of the three statutes that S.H. relies on requires a school principal to investigate the cause of a student’s tardiness. Section 16-28-12(b) requires that local boards of education adopt written policies for student conduct, including policies concerning compliance with the compulsory attendance laws. It further requires that local school superintendents provide parents and custodians of enrolled students with a copy of the written policies. It states no requirement with regard to a school principal’s “duty to investigate.”
Section 16-28-13 states that a parent will not be convicted under the Alabama Compulsory School Attendance Law, § 16-28-1 et seq., if the parent “can establish to the reasonable satisfaction of the court” any of five listed defenses; the fourth of those defense is:
“(4) That there exists a good cause or valid excuse for such absence....
[[Image here]]
“A good cause of valid excuse, as used in this section, exists when on account of sickness or other condition attendance was impossible or entirely inadvisable or impracticable or when, by virtue of the extraordinary circumstances, the absence is generally recognized as excusable.”
*1117 Section 16-28-13 also states no requirement that a school principal investigate the cause of a student’s tardiness.
Section 16-28-16(a) places a duty on the [county or city] attendance officer — not the school principal — “to investigate all cases of nonenrollment and of nonattendance.”
We also hold that the school principal did not violate S.H.’s right to due process by failing to follow some of the progressive-discipline policies outlined in the Handbook before submitting her name to the truant officer for inclusion in the Early Warning Program. S.H. argues that the principal had a duty, pursuant to Article 4, § 2b.(l) (recommending an “[Tin-school conference and parental contact when warranted”) to inquire why she was tardy before sending her name to the truant officer. The principal, when asked why he did not have a conference with S.H. or contact her parent to discuss S.H.’s repeated lateness to school, answered that he did not think those actions were warranted.
Initially, we note that Article 4, § 2b.(l) applies only to a “first offense.” In light of another section of the Handbook that places on the student the obligation of providing a timely excuse for all absences, rather than placing on the principal the responsibility of inquiring as to the existence of an excuse, we cannot hold that the principal denied S.H. due process by failing to inquire of her or her parent the reason for her tardiness on the first occasion.
Under the category of “Absences and Excuses” in the Handbook, subsection D, entitled “Excuses,” states:
“It will be the student’s responsibility to provide the designated school official with the proper data to verify that an absence should be excused. THIS MUST BE DONE NO LATER THAN TWO (2) DAYS AFTER RETURNING TO SCHOOL.
“NOTE: No written excuse will be accepted after two (2) school days following the last date of absence unless there are extenuating circumstances beyond the student’s control that are approved by the principal.”
(Capitalization and emphasis original.) The juvenile court was authorized to accept the principal’s conclusion that the measures listed in Article 4, § 2b.(l) of the Handbook were not warranted the first or second time that S.H. was tardy. For the third time that S.H. was tardy, the principal testified that he followed the policy set out at Article 4, § 2b.(2) (recommending “[i]n-school disciplinary action, such as ... detention”) by sending her to “Saturday School.”
III.
In Dothan City Board of Education v. V.M.H., 660 So.2d 1328 (Ala.Civ.App.1995), this court held that a school board denied a student due process of the law when it failed to exercise its independent judgment concerning whether an air rifle in the student’s vehicle, which was locked and parked on school grounds, was an “ ‘item which may conceivably [be] used as a weapon.’ ” 660 So.2d at 1328. Citing V.M.H., S.H. argues that the school principal, by neglecting to inquire about or investigate the reason for her tardiness, failed to exercise his independent judgment regarding whether she was an “habitual truant” within the meaning of the Alabama Compulsory School Attendance Law, § 16-28-1 et seq., Ala.Code 1975. S.H. did not present this independent-judgment argument to the juvenile court; she raises it for the first time on appeal, and, therefore, we do not consider it. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992).
*1118 IV.
S.H. argues that the juvenile court erred by disallowing evidence that, she claims, would have established that she was denied the equal protection of the laws. S.H. contends that the truancy laws were selectively enforced against her because, she says, similarly situated students at another Franklin County high school were not treated as CHINS when they had accumulated five unexcused tardies per semester.
At trial, S.H. attempted to present evidence that students at Red Bay High School had their tardy slates “wiped clean” at the beginning of each nine-week grading period, presumably implying that Red Bay students could accumulate five or more tardies per semester without being reported to the truant officer. When S.H.’s lawyer questioned the Phil Campbell High School principal and the Franklin County truant officer about the tardy policy at Red Bay High School, the prosecutor objected and the juvenile court sustained the objection. The principal testified that he was following the school board’s policy; he said that if other principals were not treating tardiness in the same way he was, they were violating the school board’s policy. The truant officer stated that he followed the same procedure for all students in the county regardless of which school they attended.
The Court of Criminal Appeals has set out the elements of a claim alleging selective prosecution:
“ ‘ “[AJlthough no clear standards exist for quantum or type of proof sufficient to illustrate discriminatory enforcement of a statute ..., three elements must generally be proved: selectivity in enforcement; selectivity that is intentional; and selectivity based upon some invidious or unjustifiable standard such as race, religion, or other arbitrary classification. It is insufficient merely to show that other violators have not been prosecuted, that there has been laxity in enforcement, or that there has been conscious exercise of some selectivity in enforcement.”
“ ‘DeShazo v. City of Huntsville, 416 So.2d 1100, 1103 (Ala.Cr.App.1982). See also Carroll v. State, 599 So.2d 1243, 1244-45 (Ala.Cr.App.1992).’ ”
City of Montgomery v. Norman, 816 So.2d 72, 79 (Ala.Crim.App.1999) (quoting Facion v. State, 627 So.2d 1144, 1145 (Ala.Crim.App.1993)). We conclude that, even if S.H. had been allowed to present the evidence she sought, she would have fallen short of establishing selective prosecution because she did not allege that the selectivity was intentional and that it was based on an impermissible standard.
V.
S.H. contends that she is not subject to the mandatory school-attendance requirement because, being over the age of 16 years, she is not required to enroll in school. That argument was rejected in State v. L.N.A., 811 So.2d 637 (Ala.Crim. App.2001). There the Court of Criminal Appeals held:
“Section 16-28-3, Ala.Code 1975, specifies which children are required by law to attend school. In contrast, § 16-28-16(b), Ala.Code 1975, provides that, with certain listed exceptions, each child who is enrolled in a public school, whether or not that child is required by law to enroll, is subject to the attendance and truancy provisions set forth in §§ 16-28-1 through -24, Ala.Code 1975. Therefore, contrary to the juvenile court’s finding, the amendment to § 16-28-16, Ala.Code 1975, did not amend or extend the provisions of § 16-28-3, Ala. Code 1975.”
811 So.2d at 643.
S.H. argues that § 16-28-2.1, Ala. Code 1975, undercuts the holding in *1119 L.N.A., supra. We disagree. That section provides, in pertinent part:
“Parents shall be held accountable in accordance with Sections 16-28-12 and 16-28-7, for the failure of the child who is of compulsory attendance age to attend either public, private or church-school.”
Section 16-28-2.1 deals only with which party is accountable, “for the failure of [a] child who is of compulsory attendance age to attend” school. The statute makes it clear that a parent is accountable for his or her child’s truancy only if the child is “of compulsory attendance age,” that is, if the child has not reached the age of 16. Conversely, if a child has reached the age of 16 when the alleged truancy occurs, then only the child is accountable. In the present case, S.H. was over the age of 16; thus, the petition in juvenile court correctly named only her, and not her father, as the subject of the proceeding.
The judgment of the juvenile court is affirmed.
AFFIRMED.
PITTMAN, J., concurs.
MURDOCK, J., concurs in the result.
YATES, P.J., and THOMPSON, J., dissent.