960 So.2d 651 (2005)
Shirley SQUIRES and Ronald Squires
v.
CITY OF SARALAND.
2030874.
Court of Civil Appeals of Alabama.
November 23, 2005.
Rehearing Denied March 24, 2006.
*653 William W. Watts III of Hudson & Watts, LLP, Mobile, for appellants.
T. Dwight Reid of T. Dwight Reid & Associates, Mobile, for appellee.
PITTMAN, Judge.
This appeal, transferred from the Supreme Court pursuant to Ala.Code 1975, § 12-2-7(6), concerns whether a municipality may properly require a resident of that municipality who seeks to provide day care for no more than five children per day in her house to obtain a "special exception"[1] to a municipal zoning ordinance where (a) the municipality issued a business license to the applicant; (b) the zoning ordinance had not previously been enforced against other day-care providers in the same manner; and (c) the zoning ordinance in question refers to "day care centers," a term that is defined in the Alabama Code to include only those facilities that provide services to more than 12 children at one time.

Facts
The City of Saraland ("the City"), in approximately 1958, adopted a comprehensive citywide zoning ordinance. As amended, section 4.1 of that ordinance provides, among other things, that owners located within a residential "R-1" district must obtain a "special exception" from the City of Saraland Board of Adjustment ("the Board") before operating certain home businesses, including "kindergartens, playschools and day care centers, public or private," in that district. Section 8.2 of the zoning ordinance defines "day care center" by reference to a definition of "nursery school," which is in turn defined as "[a] place for the day care and instruction of *654 children not remaining over night; includes day care centers."
Shirley Squires lives with her husband Ronald Squires in a house located in the City's Tarver Heights neighborhood. The Squireses' house lies within an "R-1" district. In February 2000, Shirley Squires, who had worked for a Mobile hospital for the preceding 23 years, decided to change professions and provide day care for children. Ms. Squires telephoned the City and asked with whom she would need to speak in order to be permitted to obtain a license to provide child day care, whereupon she was referred to the City's building inspector, who also served as the City's zoning-enforcement officer. The building inspector informed Ms. Squires that before she could begin providing day care in her house, she would need to receive fire-protection clearance from the City's fire department in order to obtain approval from the State Department of Human Resources ("DHR") for her day-care operation. Ms. Squires was then referred to City fire-department officials, who informed her that she would not need a sprinkler system because she planned to limit to six the number of children for whom she would be caring daily.
Ms. Squires then filed an application to the City for a business license. The application identified the name of the applicant as a sole proprietorship named "HeavenLee's Home Daycare," the type of business as "Home (Family) Daycare," and the principal business activity as "Daycare." The business-license application form bore no entry in the field provided for identifying the applicant's "Business Location in Saraland." The sole address listed on the form was the address of the Squireses' house. The office of the Saraland city clerk issued Ms. Squires a business license on February 14, 2000.
Under "The Child Care Act of 1971," which is codified as Ala.Code 1975, § 38-7-1 et seq. ("the Child Care Act"), a person who wishes to operate any "child-care facility" in Alabama must obtain, and maintain in force, a license obtainable from DHR. See §§ 38-7-3 and 38-7-4, Ala.Code 1975. The Child Care Act defines a number of specific classes of child-care facilities by reference to their hours of operation (day or night) and sizes of child populations (e.g., 6 children or less, between 7 and 10 children, more than 10 children, or more than 12 children). A "Day Care Home" is defined in the Child Care Act as "[a] child-care facility which is a family home and which receives not more than six children for care during the day." Ala.Code 1975, § 38-7-2(5). Based upon the City's issuance of a business license to Ms. Squires, DHR officials issued a two-year license to Ms. Squires to operate HeavenLee's Home Day Care at her house as a "Family Day Care Home"; according to the Mobile County DHR child-development-consultant supervisor, DHR was informed by the City's building inspector that the City would not issue a business license unless a house was in compliance with zoning requirements.
In May 2002, apparently in response to complaints of increased traffic in the area of the Squireses' house, an attorney for the City, at the City's request, sent a letter to Ronald Squires informing him that it was necessary to obtain permission from the Board in order to operate a business out of a house in an R-1 district and that a review of City records indicated that no application for such permission had been made and that no permission had been given for the operation of a neighborhood business at the Squireses' house. During the following month, the City's attorney sent a second letter to Mr. Squires requesting that he go to the office of the City's building inspector to complete forms *655 to obtain permission to operate a neighborhood business; Mr. Squires was asked to seek that permission immediately because the City would not continue to forbear taking action to correct violations of its zoning ordinance. Ms. Squires then completed and submitted to the Board a form that had been supplied by the building inspector entitled "Appeal to the Board of Adjustment"; in that form, she requested a "use variance" to allow her to operate an in-home day-care business at the address listed on the form, which was her home address.
The Board considered Ms. Squires's form request at its August 6, 2002, meeting. Ms. Squires and another nearby homeowner spoke in favor of the Board's granting permission to Ms. Squires to operate the day-care business, while eight other occupants of houses in the neighborhood spoke against the request. Although the Board's chairman called for a motion to approve Ms. Squires's request, no motion was made, prompting the chairman to state on the record that the special exception sought by Ms. Squires was "not granted" based upon that lack of a motion. Ms. Squires was informed that she had 15 days to appeal from the Board's decision. Six days later, Mr. Squires was cited for having violated the City's zoning ordinance; in addition, on that date, the attorney general issued an opinion indicating that an in-home day-care facility located in the City was required to obtain a special exception under the City's zoning ordinance.

Proceedings in the Trial Court
On August 19, 2002, the Squireses filed a notice of appeal to the Mobile Circuit Court from the Board's denial of Ms. Squires's special-exception request, naming as defendants the City and the Board. Later, in March 2003, they filed a complaint[2] seeking a declaration that the City "ha[d] no lawful authority or power to deny them the right to operate [a] day care home" based upon the lack of a special exception; they also sought injunctive relief. The Squireses alleged that the City's actions were arbitrary, were capricious, or represented selective enforcement; that the City's actions were violative of 42 U.S.C. § 1983; that the City waived, or was equitably estopped from enforcing, the provisions of the zoning ordinance requiring a special exception; and that the zoning ordinance did not apply to "day care homes" as defined under state law. The City answered the complaint and denied the Squireses' allegations in pertinent part. The Squireses filed a motion for a summary judgment in their favor on their claims for declaratory and injunctive relief, which was denied.
After an ore tenus proceeding, the trial court entered an order finding in favor of "the defendants" on the allegations of the Squireses' complaint. The Squireses' subsequent postjudgment motion as to their complaint was denied. Pursuant to Rule 54(b), Ala. R. Civ. P., the trial court directed the entry of a final judgment as to its order adjudicating the Squireses' claims for declaratory and injunctive relief. On appeal, the Squireses have asserted three principal issues: (1) whether the City was equitably estopped from enforcing its zoning ordinance; (2) whether the City's zoning ordinance is unconstitutional as applied to the Squireses; and (3) whether the City's zoning ordinance may properly be applied to "day care homes" as defined in the Child Care Act.

*656 Standard of Review

The standard of review set forth in Ex parte Board of Zoning Adjustment of Mobile, 636 So.2d 415, 417 (Ala.1994), governs:
"The trial court heard this case without a jury. Where evidence is presented to the trial court ore tenus, the court's findings of fact are presumed correct; its findings will not be disturbed except for a plain and palpable abuse of discretion. Marvin's, Inc. v. Robertson, 608 So.2d 391 (Ala.1992); City of Bridgeport v. Citizens Action Committee, 571 So.2d 1089 (Ala.1990). The judgment of the trial court based on ore tenus evidence in a nonjury case is presumed to be correct; however, that presumption has no application when the trial court is shown to have improperly applied the law to the facts. Marvin's, Inc., supra; Richard Brown Auction & Real Estate, Inc. v. Brown, 583 So.2d 1313 (Ala.1991); Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala.1985)."

Analysis

I. Equitable Estoppel
Although "the doctrine of estoppel is rarely applied against a municipal corporation," it "may apply against a municipal corporation when justice and fair play demand it and where there has been a misrepresentation or concealment of material fact." City of Foley v. McLeod, 709 So.2d 471, 474 (Ala.1998). As our Supreme Court stated in State Highway Dep't v. Headrick Outdoor Advertising, Inc., 594 So.2d 1202, 1204-05 (Ala.1992):
"Equitable estoppel is to be applied against a governmental entity only with extreme caution or under exceptional circumstances. First Nat'l Bank of Montgomery v. United States, 176 F.Supp. 768 (M.D.Ala.1959), aff'd, 285 F.2d 123 (5th Cir.1961); Ex parte Fields, 432 So.2d 1290 (Ala.1983).
"`Under the settled law, equitable estoppel . . . must be predicated upon the conduct, language, or the silence of the party against whom it is sought to be invoked. Said conduct, language, or silence must amount to the representation or concealment of a material fact or facts. The representation must be as to the facts and not as to the law. . . .
"`. . . .
"`"The doctrine of equitable estoppel is not a bar to the correction . . . of a mistake of law."'

"(Emphasis added [in Headrick].) 176 F.Supp. at 772, quoting Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 182, 77 S.Ct. 707, 709 1 L.Ed.2d 746 (1957).
"In Ex parte Fields, supra, at 1293, this Court held that neither the state or its political subdivisions can be `estopped by doing that which they have no authority to do.'"
The essential elements of equitable estoppel were set forth in Ledlow v. City of Pell City, 497 So.2d 86, 89 (Ala.1986):
"`The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. The other relies upon that communication. And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct.'"
(Quoting Mazer v. Jackson Ins. Agency, 340 So.2d 770, 773 (Ala.1976).)
The Squireses cite City of Foley, supra, 709 So.2d 471, in support of their position. In City of Foley, the Supreme Court affirmed a partial summary judgment preventing a municipality from enforcing its *657 zoning ordinance so as to require the owner of a mobile-home park to remove six particular mobile-home rental units that had replaced earlier units in that park, which had been operated as a preexisting nonconforming use. The Supreme Court based its affirmance upon evidence indicating that "numerous mobile homes" had been moved into and out of the mobile-home park over the years without objection from the municipality and that even when the municipality had objected, it had done so only after the park owners had already purchased the mobile homes and had prepared them for rental. The Squireses also cite cases from two other jurisdictions: Even v. City of Parker, 1999 SD 72, 597 N.W.2d 670 (1999), a 3-2 decision upholding a trial court's finding of estoppel where a building inspector issued a building permit for a planned replacement garage after failing to ask whether the planned garage would be of "pole-type" construction (which required a conditional-use permit), and Landing Development Corp. v. City of Myrtle Beach, 285 S.C. 216, 329 S.E.2d 423 (1985), in which a zoning administrator admitted that before a condominium-rental business license had been issued to a landowner, the landowner's president had specifically asked him if rentals were permitted in the pertinent district and he had replied that such rentals were permitted.
The City distinguishes City of Foley on the basis that "a simple, prudent review of the governing ordinance would have revealed the need to obtain a special exception at the outset." In doing so, the City effectively invokes a principle of constructive notice of zoning ordinances, one that tends to impugn the reasonableness of the Squireses' claimed reliance upon the conduct of the City officials in directing them only to seek fire-department clearance and in thereafter issuing a business license. Although the cases applying the doctrine of equitable estoppel in the area of municipal zoning do not expressly espouse a reasonableness standard with respect to reliance upon "words, conduct or silence," the Alabama Supreme Court has said, in the context of analyzing whether one may be equitably estopped to assert a limitations defense to an action, that "application of the doctrine of equitable estoppel must be tempered by applying `a standard of reasonable reliance.'" McCormack v. AmSouth Bank, N.A., 759 So.2d 538, 543 (Ala.1999) (quoting City of Birmingham v. Cochrane Roofing & Metal Co., 547 So.2d 1159, 1167 (Ala.1989)). Indeed, a party asserting estoppel must "`"in good faith been ignorant of the true facts."'" BSI Rentals, Inc. v. Wendt, 893 So.2d 1184, 1188 (Ala.Civ.App.2004), (quoting Lambert v. Mail Handlers Benefit Plan, 682 So.2d 61, 64 (Ala.1996), quoting in turn Ivey v. Dixon Inv. Co., 283 Ala. 590, 594, 219 So.2d 639, 643 (1969)).
We deem the City's position persuasive. In this case, the provisions of the zoning ordinance were constructively known to all citizens of the City, including the Squireses.[3]See Turner v. State Employees' Retirement Sys., 485 So.2d 765, 766 (Ala.Civ.App.1986) ("as a matter of public policy, all men are charged with knowledge of the law pertaining to their transactions"). Moreover, as the principal case relied upon by the City, Cobb v. City of New Hope, 682 So.2d 1375 (Ala.Civ.App. 1996), notes, a municipality's unlawful issuance of a building permit would not authorize *658 the permittee to violate a valid zoning ordinance. See also Security Sav. Life Ins. Co. v. Weaver, 579 So.2d 1359, 1360 (Ala.Civ.App.1991) (government nonenforcement of laws cannot act to estop the government from later enforcing those laws, even when individuals have relied on incorrect advice from a government agency and even when substantial sums of money have been expended in reliance on continued nonenforcement of the law). The pertinent principle that we glean from the foregoing authorities is that reliance upon a particular grant of municipal permission is unreasonable to the extent that such permission is interpreted by the recipient of that permission as carte blanche to ignore other legal requirements that may exist.
Although the City in this case issued Shirley Squires a business license, rather than a building permit such as was issued to the applicant in Cobb, that is a distinction without a difference, especially in view of City of Trussville v. Porter, 279 Ala. 467, 187 So.2d 224 (1966). In Trussville, a corporation was issued a business license by a city to operate a quarry within the police jurisdiction of that city in exchange for a payment of $25.50, and municipal officials purportedly assured the corporation that a necessary permit to allow the corporation to engage in operations at the planned quarry site would later be issued. However, the city then denied the corporation's permit and attempted to refund the license fee to the corporation. In reversing a judgment enjoining city officials from arresting the corporation's workers for undertaking work at the quarry site, the Supreme Court rejected the materiality of the city's issuance of the business license, holding that "the issuance of a business license in no wise implies a consent of the governing body for the operation of such business" and that business licenses may be issued even to unlawful businesses. 279 Ala. at 469, 187 So.2d at 226.
Thus, we are drawn to the conclusion that, in and of itself, the City's issuance in this case of a business license to Shirley Squires on the basis of the representations in her application would not reasonably constitute a representation that a day-care business could be operated in the Squireses' house, and thus does not warrant application of the doctrine of equitable estoppel to the City so as to prevent its enforcement of its zoning ordinance. Under the facts of this case, the business license issued to Shirley Squires connoted, at most, mere general permission to operate a business within the geographic boundaries of the City rather than specific permission to operate a business at a particular location. Stated another way, the mere issuance of a day-care business license by the City was an insufficient express or implied "representation" concerning the propriety of operating a business within an R-1 district without obtaining a special exception that would warrant the application of the doctrine of equitable estoppel against the City under Alabama law.
We likewise reject the proposition that the explicit or implicit representations of the City's zoning-enforcement officer to the effect that Shirley Squires could operate a business on the Squireses' property after obtaining fire-department clearance may be said to equitably estop the City from insisting that the Squireses obtain a special exception as required by the City's zoning ordinance. Such representations would, under Alabama law, amount to representations of law and not of fact, and would therefore not equitably estop the City from enforcing its zoning ordinance notwithstanding such representations under City of Orange Beach v. Benjamin, 821 So.2d 193 (Ala.2001). In Orange *659 Beach, evidence was adduced indicating that a municipal building inspector had told an individual who owned land near a navigable body of water that the pertinent municipality lacked jurisdiction as to those waters and that the individual would not need a permit to construct a pier that extended into that body of water; however, in actuality, the municipality held riparian rights as to those waters. The Supreme Court reversed a judgment denying an injunction in favor of the municipality preventing the individual and his wife from using or maintaining a pier constructed on the body of water at issue, holding that the municipality "should not be estopped from correcting [the] mistaken statement of the law" made by the building inspector. 821 So.2d at 197. Orange Beach is fatal to the Squireses' equitable-estoppel arguments to the extent that they are based upon conduct of the City's zoning-enforcement officer.
Finally, we note the Squireses' claim that the doctrine of equitable estoppel applies because Shirley Squires left her former profession in order to operate a day-care business. That argument is, at bottom, cumulative. To the extent that we have concluded that the City made no representation of fact upon which the Squireses, or either of them, could reasonably have relied as to the necessity of obtaining a special exception before undertaking lawful operation of a day-care business on their property, it does not avail the Squireses to assert the extent of Shirley Squires's actions in furtherance of her plan to operate that business on that property. While we are not unsympathetic to Shirley Squires's significant efforts to change careers, this court, like the trial court, lacks the power to negate the clear effect of the City's zoning ordinance upon her plans. We thus affirm the trial court's judgment as to the issue of equitable estoppel.

II. Selective Enforcement
The Squireses also contend on appeal that the judgment in favor of the City should be reversed because, they say, the City has not consistently enforced the requirement that a special exception be obtained before a "day care center" or other potentially suitable home business may begin operation in an R-1 district. In doing so, the Squireses have explicitly invoked federal and purported state guarantees of equal protection of the laws in support of their claim that the zoning ordinance cannot lawfully be applied to them.[4]
However, as the City has correctly noted, the Squireses' constitutional attack on the application of the zoning ordinance is not properly presented for review. As the City notes in its brief, § 6-6-227, Ala.Code 1975, a portion of the Declaratory Judgment Act, states that "[i]n any proceeding which involves the validity of a municipal ordinance, or franchise . . . if the statute, ordinance, or franchise is alleged to be unconstitutional, the Attorney General of the state shall . . . be served with a copy of the proceeding and be entitled to be heard." That statute has been held to impose a jurisdictional requirement, i.e., if a statute or ordinance is alleged to be unconstitutional, a trial court may not enter a valid judgment concerning the constitutionality of the challenged statute or ordinance unless the attorney general is served with notice of the challenge. E.g., Smith v. City of Florence, 288 Ala. 61, 62, 256 So.2d 893, 894 (1971). The Squireses have undisputedly not served a copy of their complaint or other papers in this case upon the Attorney General.
*660 Although the Squireses' reply brief posits that § 6-6-227 should be limited to facial challenges to a statute's or an ordinance's constitutionality, as opposed to constitutional challenges to such laws as applied, there is authority for the proposition that § 6-6-227 does apply to constitutional challenges to particular applications of statutes or ordinances. See Ex parte Northport Health Serv., Inc., 682 So.2d 52, 54 (in which the trial court, absent notice to the attorney general, declared that "`any application of'" portions of the Alabama Medical Liability Act of 1987 that "`jeopardize[d] the protection of the infirm elderly'" would be unconstitutional, that court's order was void to that extent); City of Russellville v. Wilson, 591 So.2d 523 (Ala.Civ.App.1991) (holding that absent compliance with § 6-6-227, the trial court was without jurisdiction to enter a judgment based upon contention that particular local act was unconstitutional as applied to him); Landers v. O'Neal Steel, Inc., 564 So.2d 925, 926 (Ala.1990) ("Landers did not serve the attorney general with notice of his challenge to the constitutionality of the exclusivity provision [of the Workers' Compensation Act] as applied to his action. . . . The attorney general has filed a motion to strike the constitutional challenge. That motion is due to be granted.").
The Squireses' failure to serve the attorney general with notice of their claim that the City's application of its zoning ordinance to Shirley Squires's business operations on the Squireses' property was unconstitutional barred the trial court from entering a valid judgment as to that issue, and likewise precludes appellate review of that issue. We thus affirm the trial court's judgment without reaching the issue whether the City is guilty of discriminatory selective enforcement under principles recognized in cases such as Hunt v. State, 642 So.2d 999, 1003-04 (Ala.Crim.App. 1993), aff'd, 642 So.2d 1060 (Ala.1994), and S.H. v. State, 868 So.2d 1110, 1118 (Ala. Civ.App.2003) (plurality opinion). See also 4 Edward H. Ziegler, Jr., et al., Rathkopf's Law of Zoning and Planning (discussing selective enforcement in the context of zoning law).

III. Claimed Inconsistency with State Law
The Squireses' final contention is that the special-exception requirement of the City's zoning ordinance was unlawfully applied to them because, they argue, Ms. Squires's business is classified under the Child Care Act as a "day care home" and not a "day care center" because she cares for no more than six children in her house. This contention, to the extent that it has any force at all, derives its force from general principles counseling strict interpretation of land-use restrictions and opinion testimony from the City's building manager that the zoning ordinance (which, although revised in 1987, has been in force since the late 1950s) contemplated only day-care facilities with more than 12 children.
After a review of the pertinent ordinance, we are constrained to reject the Squireses' arguments as to this issue. They cite no authority that would require a municipality to adopt zoning ordinances that precisely track the definitions used in general licensing acts, and there is no indication in the zoning ordinance itself that the City intended to differentiate among "day care centers" based solely upon the number of children for whom one intends to care on a daily basis. In contrast, the zoning ordinance does contain a provision (§ 9.2), entitled "Relationship to Other Laws," that provides that "[w]henever regulations or restrictions imposed by this Ordinance are either more or less restrictive than regulations or restrictions imposed by any governmental authority . . . through legislation . . . rule or regulation, *661 the ordinance, regulations, rules or restrictions which are more restrictive or which impose higher standards or requirements shall govern" (emphasis added). Moreover, as previously noted, the attorney general, whose advisory opinion is entitled to great weight (see, e.g., Mobile Constables Ass'n, Inc. v. Alabama Dep't of Public Safety, 670 So.2d 28, 29 (Ala.1995)), has concluded that the City's zoning ordinance requires that a special exception must be obtained in order to operate, in the City, a "day care home" as defined in the Child Care Act. We therefore affirm the trial court's judgment as to this issue.

Conclusion
Based upon the foregoing facts and authorities, the judgment of the Mobile Circuit Court is due to be affirmed.
AFFIRMED.
CRAWLEY, P.J., concurs.
THOMPSON and MURDOCK, JJ., concur in the result, without writing.
BRYAN, J., dissents, with writing.
BRYAN, Judge, dissenting.
I respectfully dissent. I would hold that the City is estopped from requiring Ms. Squires to obtain a special-use permit to operate her home day care. "[A]lthough the doctrine of estoppel is rarely applied against a municipal corporation, it may be applied in a proper case when justice and fair play demand it and where there has been a misrepresentation or concealment of a material fact." City of Foley v. McLeod, 709 So.2d 471, 474 (Ala.1998). The City issued Ms. Squires a business license allowing the operation of her home day care, and the City did not object to Ms. Squires's home day care until more than two years after issuing her a business license. Having obtained a business license from the City, Ms. Squires left her previous job and incurred considerable costs in starting her home day care. The Squireses presented evidence indicating that numerous businesses in the City, including day-care facilities, had been issued business licenses despite having not acquired variances or special-use permits as required by the City's zoning ordinance. The City's zoning-enforcement officer testified that Ms. Squires did everything that the City required her to do to obtain a business license.
Given these factors, the City essentially represented to Ms. Squires that it would not require her to obtain a special-use permit. In this sense, the present case is similar to City of Foley in that the City has misrepresented or concealed a material fact. See City of Foley, 709 So.2d at 474 ("[T]he City's continued acquiescence amounted to a misrepresentation of a material fact, namely that it would not enforce the zoning ordinance. . . ."). I believe that the present case is distinguishable from City of Orange Beach v. Benjamin, 821 So.2d 193 (Ala.2001), which, unlike this case, involved a clear mistake of law. Although estoppel is to be rarely applied against a municipality, justice and fair play require it in this instance.
NOTES
[1] In zoning law, a "special exception" "is a conditionally permitted use, that is, it is an enumerated use specified in the zoning ordinances that requires the approval of an administrative board or agency," i.e., it "`allows a property owner to put his property to a use which the regulations expressly permit under conditions specified in the zoning regulations themselves.'" Ex parte Fairhope Bd. of Adjustment & Appeals, 567 So.2d 1353, 1355 (Ala.1990) (quoting 101A C.J.S., Zoning & Land Planning § 229 (1979)). In contrast, a "variance" "requires a showing of unnecessary hardship and results from a request that the zoning authorities grant relief from the literal requirements of the zoning ordinances." 567 So.2d at 1355.
[2] Although the Board was listed as an additional defendant in the notice of appeal to the circuit court, and is listed in the notice of appeal to this court as an additional appellee, the pleadings and the case-action summary sheet in this cause include only the City as a defendant; moreover, the complaint seeks only relief as against the City.
[3] Although the Squireses have argued that their review of the zoning ordinance would have been "meaningless" because of the City's spotty enforcement history, the record is silent regarding whether the Squireses ever specifically asked the building inspector, or were ever told by him, about the City's zoning-enforcement practices.
[4] There is, in actuality, no guarantee of equal protection enumerated in the Alabama Constitution of 1901, a fact that was recognized in Ex parte Melof, 735 So.2d 1172, 1205 (Ala. 1999).