THOMAS, Judge.
 

 Barbara Mousseau appeals a judgment of the Baldwin Circuit Court affirming a decision by the City of Daphne Board of Zoning Adjustments (“the Zoning Board”) that prohibited Mousseau from reconstructing or restoring a mobile home on her property after the mobile home was damaged by fire. We affirm.
 

 Mousseau lives in a frame house on property located on Parker Lane in
 
 *546
 
 Daphne (“the City”). A 31-year-old, 3-bedroom mobile home is located on the same property. In the early morning hours of January 15, 2004, a fire started in the kitchen of the mobile home on Mous-seau’s property. Before firefighters arrived on the scene, the fire had damaged much of the kitchen; the fire was extinguished when it burned through, and burst, a water line. The City’s fire chief inspected the fire-damaged property, determined that it was unsafe for reasons other than the fire damage, and asked the City’s building official to inspect the mobile home. The building official concluded that the structure was uninhabitable and could “not be repaired economically and/or satisfactorily to remedy [its] unsafe conditions.” Soon after the fire, Mousseau, her brother David Gautney, and other family members began to repair the damage to the kitchen; they also undertook repairs and updates to other parts of the mobile home that had not been affected by the fire.
 

 On July 19, 2004, the City Council passed a resolution declaring that the mobile home was a public nuisance and should be demolished. On July 2, 2004, Mousseau’s brother, David Gautney, wrote a letter to City’s building official, Ronnie Phillips, requesting a 90-day extension to complete repairs on the mobile home. Phillips denied the request on July 13, 2004. On September 9, 2005, Phillips wrote a letter to the owners of the property, informing them that, in his opinion, the mobile home was “a nonconforming structure that [had] been damaged and/or destroyed to an extent exceeding fifty percent of the reasonable estimated replacement cost and therefore cannot be reconstructed or restored to the same nonconforming use, except upon the approval of the [Zoning Board].”
 

 The applicable land-use-and-development City ordinance, enacted on September 21, 1987, provides that mobile homes are permitted only in “R-5” (mobile-home-residential) districts. Mousseau’s property on Parker Lane is in an “R-3” (high-density single-family-residential) district. Section 9-2 of the ordinance, entitled “Nonconformance” (hereinafter sometimes referred to as “the 50% ordinance”) provides, in pertinent part:
 

 “Any structure or use of land existing at the time of the enactment of this Ordinance and amendments thereto and not in conformance with its use regulations and provisions, may be continued subject to the following provisions:
 

 “(a) Unsafe Structures:
 

 “Any structure or portion thereof declared unsafe by any authority may be restored to a safe condition provided the restoration is in compliance with requirements of this Section.
 

 “(b) Alterations
 

 “Any change in a nonconforming building site or yard area is subject to the following:
 

 [[Image here]]
 

 “(4)
 
 A nonconforming building, ¡structure, or improvement which is hereafter damaged or destroyed to an extent exceeding fifty percent (50%) of the reasonable estimated replacement cost of the strucUire, building or improvement may not be reconstructed or restored to the same nonconforming use, except upon approval of the Board of Zoning Adjustment.
 
 Such damaged or destroyed structures that are no longer in use shall be removed and the site cleared at the owner’s expense.”
 

 (Emphasis added.)
 

 Mousseau appealed the decision of the building official to the Zoning Board. A
 

 
 *547
 
 hearing was held on September 7, 2006, during which William Eady, the City’s director of community development, reported the findings of the building official and displayed photographs of the mobile home showing various conditions that, he said, were “not up to Code [requirements]” and rendered the structure dangerous and uninhabitable. Ead/s report stated that the fire in the mobile home had resulted from a methamphetamine-lab explosion. Richard Stevens, whose property is diagonally across from Mousseau’s property, informed the Zoning Board that he had a newspaper article dated January 15, 2004, stating that the cause of the fire was a “meth lab explosion.”
 

 At the Zoning Board hearing, Mous-seau’s attorney outlined his client’s position as follows: Mousseau had owned the property on Parker Lane since before the City had been incorporated; the mobile home had been “grandfathered in” as a preexisting nonconforming structure pursuant to the City’s land-use-and-development ordinance; and, accordingly, Mous-seau was entitled to restore the mobile home because, she said, the fire damage did not exceed 50% of the estimated replacement cost of the structure. Mous-seau presented evidence indicating that she and other family members had spent approximately $600 on repairs to the mobile home after the fire. Neither Mous-seau nor the City presented any evidence concerning the “reasonable estimated replacement cost” of the mobile home.
 

 Bill Williams, one Mousseau’s neighbors, stated that the mobile home was not “a grandfathered situation” because, he said, the mobile home had been moved onto Mousseau’s property after September 21, 1987, the date on which the City’s land-use-and-development ordinance was enacted. The following exchange then occurred:
 

 “Q. [By Zoning Board member Willie Robison]: Did I hear you say this particular trailer was moved onto the lot after the Land Use Ordinance was passed?
 

 “A. [By Williams]: Yes, it was.
 

 “Q: [By Robison]: I am asking a legal question. Would this trailer come under the grandfather clause if it was moved onto that lot after the land Use Ordinance was passed?
 

 “A. [By Zoning Board attorney Tony Hoffman]: The answer is no.”
 

 Two other Zoning Board members also questioned whether the grandfather clause was applicable to the mobile home. Board member Jeri Hargiss, stating that she had a question “about this grandfather clause,” asked David Gautney “what year was the trailer moved in?” Gautney stated that he was 40 years old and the mobile home had been on the property since he was 6 years old. After summarizing the evidence, Zoning Board Chairman Glen Swaney stated:
 

 “I have one additional point of clarification. It has been mentioned that [the mobile home] is grandfathered in and that it was here before the [land-use ordinance] was passed. Was this unit grandfathered in? Was it there before the Land Use Ordinance?”
 

 Richard Merchant, the building official who succeeded Ronnie Phillips, replied, “We do not know ... because we could not establish a time.”
 

 On September 7, 2006, the Zoning Board denied Mousseau’s request to continue the mobile home as a nonconforming structure. On September 14, 2006, Mousseau timely appealed to the circuit court pursuant to § 11-52-81, Ala.Code 1975, which provides:
 

 “Any party aggrieved by any final judgment or decision of [the] board of zoning adjustment may within 15 days
 
 *548
 
 thereafter appeal therefrom to the circuit court by filing with such board a written notice of appeal specifying the judgment or decision from which the appeal is taken. In case of such appeal such board shall cause a transcript of the proceedings in the action to be certified to the court to which the appeal is taken, and the action in such court shall be tried de novo.”
 

 In the circuit court, the Zoning Board moved for a summary judgment, arguing that the mobile home “was not a grandfathered nonconforming structure” subject to the provisions of the 50% ordinance enacted on September 21, 1987, because the mobile home had not been moved onto Mousseau’s property until February 1989. In support of its motion, the Zoning Board attached Mousseau’s February 6, 2007, answers to interrogatories and excerpts from Mousseau’s March 1, 2007, deposition. In response to the interrogatory, “Please identify the date on which the mobile home was placed at [Mousseau’s property on] Parker Lane,” Mousseau stated that “[t]he mobile home was placed on the property in February 1989 and transferred to my name on May 16, 1989.” In deposition testimony, Mousseau stated that she and David White, her former husband and the father of her children, had each owned a half interest in the mobile home. Mous-seau testified that after White died she had, in 1989, purchased from White’s estate his half interest in the mobile home and moved it to her property on Parker Lane.
 

 In opposition to the Zoning Board’s motion, Mousseau argued that the circuit court had no jurisdiction to try the issue of the grandfathered status of the mobile home because that issue had not been presented to the Zoning Board and included in the transcript of the Zoning Board proceedings. In support of that argument Mousseau cited
 
 Ex parte Lake Forest Property Owners’ Association,
 
 603 So.2d 1045 (Ala.1992), and
 
 White’s Excavation & Construction Co. v. Board of Zoning Adjustments of Daphne,
 
 636 So.2d 422 (Ala.Civ.App.1994). On May 22, 2007, the circuit court denied the Zoning Board’s motion for a summary judgment.
 

 The case was tried in the circuit court on October 23, 2007. The court heard disputed testimony regarding the value of the mobile home in 1989, the current value of the mobile home, and the amount the owners had spent to repair the mobile home after the fire. In addition, the circuit court heard the testimony of Bill Williams, who testified that he lived on Parker Lane, diagonally across from Mousseau’s property. Williams stated that he remembered that the closing on his house had been on November 22, 1988, that he had moved into his house “right before Thanksgiving [of] 1988,” and that he had eaten Thanksgiving dinner in his house. He testified that the mobile home that burned in the fire of January 15, 2004, was not on Mousseau’s property at that time. He also stated that when he moved into his house Parker Lane was within the Daphne city limits.
 

 Mousseau testified at trial that she had moved the mobile home onto her property in February
 
 1988
 
 and that Parker Lane was not, at that time, within the Daphne city limits. When confronted with the fact that she had stated, in answer to the Zoning Board’s interrogatory, that she had placed the mobile home on her property in February
 
 1989,
 
 Mousseau explained that she had been “mistaken because [her] ex [husband] died in December, the 27th of ’88 and [the mobile home] was moved right after that.” The Zoning Board offered and the circuit court admitted as a trial exhibit the verified petition for letters of administration on the estate of James
 
 *549
 
 White that Mousseau and her father had filed in the Baldwin Probate Court on March 1, 1988. That petition averred that White had died on December 29, 1987.
 

 The circuit court admitted in evidence a document signed by Arthur Witherington, who is Mousseau’s uncle and the owner of a mobile-home park, stating that the appraised value of the mobile home on January 28, 1989, was $2,000. The court also admitted a “Final Settlement Statement,” dated May 16, 1989, pertaining to the estate of James White. That document indicates that, on February 22, 1988, the administrator of the estate had disbursed $95 in order to “move [a] mobile home.” Mousseau acknowledged at trial that the mobile home had first been moved to a mobile-home park in Spanish Fort before it was placed on her property. Mousseau introduced a City annexation and zoning map purporting to show that Parker Lane had been annexed by the City sometime in 1988. The circuit judge admitted the map in evidence, but it noted that the map was undated and did not show that Parker Lane was included in the annexation.
 

 Mousseau’s brother, David Gautney, who had stated at the Zoning Board hearing that the mobile home had been placed on the property when he was 6 years old, testified in the circuit court trial that the mobile home had been placed on the property when he was 20 years old. Mous-seau’s sisters, Candice Danner and Debra Gormandy, testified that the mobile home had been moved to the property in 1987 or 1988. Gormandy stated that she had a one-sixth interest in the mobile home.
 

 On November 14, 2007, the circuit court entered the following judgment:
 

 “1. The Court finds from the evidence that the mobile home in question is not grandfathered because it was placed on the property after the adoption of the Daphne zoning ordinance. The Court bases that decision upon the first set of interrogatory answers submitted by [Mousseau] together with the testimony of the across-the-street neighbor and the date of the final settlement of [James White’s] estate.
 

 “2. The Court having determined that the trailer was not grandfathered, it does not need to make any determination as to whether or not the repairs would exceed fifty (50%) percent of the value.
 

 “3. The Court hereby [afjfirms the decision of the City of Daphne Board of Zoning Adjustments.”
 

 On December 21, 2007, Mousseau appealed to the Alabama Supreme Court. On January 15, 2008, the supreme court detei*-mined that the appeal was within this court’s appellate jurisdiction and transferred the case.
 

 On appeal, Mousseau argues, as she did in opposition to the Zoning Board’s summary-judgment motion, that the circuit court had no jurisdiction to determine that the mobile home was “not grandfathered because it was placed on the property after the adoption of the Daphne zoning ordinance.” Citing
 
 Ex parte Lake Forest Property Owners’ Association,
 
 603 So.2d 1045 (Ala.1992),
 
 Board of Zoning Adjustment of Hueytown v. Warren,
 
 366 So.2d 1125 (Ala.1979), and
 
 White’s Excavation & Construction Co. v. Board of Zoning Adjustments of Daphne,
 
 636 So.2d 422 (Ala.Civ.App.1994), Mousseau contends that that issue was not raised or considered by the Zoning Board and, therefore, that it could not be considered by the circuit court on de novo appeal.
 

 In
 
 Lake Forest,
 
 the Alabama Supreme Court stated the rule that, on a de novo appeal of a decision by a board of zoning adjustment, the circuit court “may hear only those issues that were properly raised
 
 *550
 
 before [the] board of adjustment and that are included in the transcript of the proceedings.” 603 So.2d at 1046. In
 
 'Warren,
 
 the supreme court held that “the trial de novo should proceed on the same issues raised in the proceeding before the Board of Zoning Adjustment,” 366 So.2d at 1128, and that “a circuit court is without power to
 
 change
 
 the issue on appeal de novo,” 366 So.2d at 1129 (emphasis omitted; emphasis added). In
 
 White’s Excavation,
 
 this court held that, “[ujnder [§ 11-52-81, Ala.Code 1975], the circuit court can examine only those issues which
 
 could he
 
 properly presented to the Board and is without jurisdiction to try an issue not raised before the Board.” 636 So.2d at 423 (citing
 
 City of Homewood v. Caffee,
 
 400 So.2d 375 (Ala.1981)) (emphasis added).
 

 The principles set out in the three decisions Mousseau cites are unassailable. Applying those principles to the facts of this case, however, did not deprive the circuit court of jurisdiction to consider the grandfather issue because that issue
 
 was
 
 “raised before [the] board of adjustment and ... included in the transcript of the proceedings.” The circuit court did not
 
 “change
 
 the issue on appeal de novo”; instead, the circuit court examined an issue that not only could have been — but was— presented to the Zoning Board. As our summary of the Zoning Board proceedings indicates, the grandfather issue was considered by the Zoning -Board. Witness Bill Williams opined that the mobile home was not affected by the grandfather-clause provisions of the ordinance because the mobile home had been placed on the pi-op-erty after the enactment of the ordinance. In addition, three members of Zoning Board — Board Chairman Glen Swaney and Board members Willie Robison and Jeri Hargiss — expx-essed concerns about the applicability of the grandfather clause. The transcript of the proceedings indicates that the gi’andfather-clause inquiries came to an end when — and because — Building Official Richard Merchant answered the chairman’s inquiry, “Was this [mobile home] unit grandfathered in? Was it there before the Land Use Ordinance?” with the following statement:
 
 “We do not know ... because we could not establish a time.”
 
 (Emphasis added.)
 

 Mousseau had the burden of proving that the mobile home was on her property before the City’s land-use ordinance took effect.
 
 See
 
 8A Eugene McQuillin,
 
 The Law of Municipal Corporations
 
 § 25.188.50 at 67-69 (3d ed. rev.2003):
 

 “A nonconforming use will not be recognized in the absence of sufficient competent evidence to prove it was lawfully in existence at the time the ordinance was enacted and that it has continued in existence. The burden of proof is upon the party asserting a right to a nonconforming use to establish the lawful and continued existence of the use at the date of the enactment of zoning laws pertaining to it.”
 

 (Footnotes omitted.) Apparently, after Merchant indicated that the City had no facts to document whether the mobile home was a nonconforming structure that enjoyed grandfathered status, the Zoning Board must have concluded that Mousseau met her burden of proving that the mobile home was a preexisting nonconforming structure. The Zoning Board necessarily decided that issue or it could not have proceeded to apply the 50% ordinance to the mobile home on Mousseau’s property.
 
 See generally
 
 Douglas Hale Gross, Annot.,
 
 Zoning: Right to Repair or Reconstruct Building Operating as Nonconforming Use, After Damage or Destruction by Fire or Other Casualty,
 
 57 A.L.R.3d 419 (1974).
 

 “One
 
 of the reasons [§ 11-52-81] requires a certified copy of the proceedings before the Board to be filed is to
 
 *551
 
 allow the circuit court to frame the issues on appeal de novo.”
 
 Board of Zoning Adjustment v. Warren,
 
 366 So.2d at 1129. In the present case, the circuit court appropriately and logically framed the issue on appeal so as to decide the threshold issue
 
 before
 
 it undertook to decide a potential subissue. In that sense, this case is the opposite of
 
 Lawless v. Smith,
 
 481 So.2d 1144, 1147 (Ala.Civ.App.1985), in which this court approved a circuit court’s admission of evidence concerning “logically inherent ‘subissues’ ” that were not presented to the zoning board.
 

 Having determined that the circuit court did not err in reaching the grandfather issue, we must now decide whether its findings on that issue are supported by the record. In
 
 Ex parte Squires,
 
 960 So.2d 661, 664 (Ala.2006), the Alabama Supreme Court, quoting from this court’s opinion in
 
 Squires v. City of Saraland,
 
 960 So.2d 651, 656 (Ala.Civ.App.2005), reversed on other grounds by
 
 Ex parte Squires,
 
 stated:
 

 “ ‘The standard of review set forth in
 
 Ex parte Board of Zoning Adjustment of Mobile,
 
 636 So.2d 415, 417 (Ala.1994), governs:
 

 “ ‘ “The trial court heard this case without a jury. Where evidence is presented to the trial court ore tenus, the court’s findings of fact are presumed correct; its findings will not be disturbed except for a plain and palpable abuse of discretion. The judgment of the trial court based on ore tenus evidence in a nonjury case is presumed to be correct; however, that presumption has no application when the trial court is shown to have improperly applied the law to the facts.” ’ ”
 

 (Internal citations omitted.)
 

 The circuit court’s decision that the mobile home was not a preexisting nonconforming structure “because it was placed on the property after the adoption of the Daphne zoning ordinance” was based “upon the first set of interrogatory answers submitted by [Mousseau] together with the testimony of [Bill Williams,] the across-the-street neighbor, and the date of the final settlement of [James White’s] estate.” Mousseau argues that the circuit court’s decision was against the great weight of the evidence because she, her brother, and her two sisters all testified that the mobile home was situated on the property in 1988. The circuit court was authorized to discount the testimony of Mousseau’s sisters because they were interested relatives and one of them acknowledged an ownership interest in the mobile home. Likewise, Mousseau and her brother David Gautney had a financial interest in the mobile home. More importantly, though, Mousseau’s trial testimony was inconsistent with her answers to the Zoning Board’s interrogatory, and Gaut-ney’s trial testimony contradicted the statements he gave at the Zoning Board hearing. The circuit court could well have concluded that Bill Williams, who testified that in November 1988 Parker Lane was within the city limits and that the mobile home was not on Mousseau’s Parker Lane property at that time, was the only disinterested witness.
 

 The circuit court was also entitled to consider the undisputed documentary evidence — that the mobile home had been appraised on
 
 January 28, 1989,
 
 for $2,000, and that the appraisal had been done for the purpose of settling the estate of James White, Mousseau’s late ex-husband — in connection with Mousseau’s testimony that she paid the estate $1,000 for a half interest in the mobile home and moved the mobile home to her property shortly thereafter. The circuit court was authorized to conclude that Mousseau would not have paid the estate $1,000 for the mobile home
 
 *552
 
 before it had been appraised and, therefore, that she most likely moved the mobile home to her property in
 
 February 1989,
 
 as she stated in answer to the Zoning Board’s interrogatory. That view of the evidence would have been consistent with Bill Williams’s testimony that the mobile home was not on Mousseau’s property on Thanksgiving 1988. Because the circuit court’s findings were supported by the record, they cannot be plainly and palpably wrong.
 

 The judgment of the Baldwin Circuit Court is affirmed.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.